John SWANSON; Idaho Sportsmen's Coalition; Alliance for the Wild Rockies; The Ecology Center; Foundation for North American Wild Sheep; Forest Conservation Council, Plaintiffs–Appellants,

v.

UNITED STATES FOREST SERVICE, an agency of the United States; Intermountain Forest Industry Association; Shearer Lumber Products, Defendants–Appellees.

No. 95–35090.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 7, 1995.

Decided June 24, 1996.

D. Bernard Zaleha, Boise, Idaho, for plaintiffs-appellants.

Christine Everett, Lois J. Schiffer, J.C. Williams, Elinor Colbourn, Vicki L. Plaut, United States Department of Justice, Washington, DC, for defendant-appellee United States Forest Service.

Bruce M. Smith, Rosholt, Robertson & Tucker, Boise, Idaho, for intervenors-appellees Intermountain Forest Industry Association and Shearer Lumber Products.

Before: D.W. NELSON and JOHN T. NOONAN, Jr., Circuit Judges, and TANNER, District Judge.*

D.W. NELSON, Senior Circuit Judge:

■ Appellants John Swanson and Idaho Sportsmen's Coalition ("ISC") challenge the decision of the Appellee United States Forest Service to authorize timber sales and road construction within the Cove and Mallard drainages of the Nez Perce National Forest. ISC maintains that in authorizing the sales, the Forest Service failed to comply with the Endangered Species Act ("ESA"),[1] the National Environmental Policy Act ("NEPA"), the National Forest Management Act ("NFMA"), and the Clean Water Act ("CWA"). The district court granted summary judgment on all but the Clean Water Act claims, and dismissed those claims for failure to give notice to the Environmental Protection Agency ("EPA"). We affirm the judgment of the district court.

*The Honorable Jack E. Tanner, Senior District Judge for the Western District of Washington, sitting by designation.

*FACTUAL AND PROCEDURAL BACKGROUND*

The Nez Perce National Forest is a 2.2 million acre national forest in Idaho County, Idaho. Within the forest are two adjacent areas known as the Cove and Mallard drainages; it was within these drainages that the Forest Service authorized the timber sales and the road construction being challenged in this matter.

Before authorizing the sales, however, the Forest Service attempted to gauge the impact that the proposed timber harvests and road construction would have upon the forest environment. As part of its analysis, the Service prepared biological assessments ("BAs") which considered the impact of the proposed activities on threatened, endangered, and sensitive species in the area; among those species studied were the Snake River chinook salmon, which were then listed as a sensitive species.

The results of the Service's environmental analysis demonstrated that the proposed actions would have no effect on the recovery or viability of any threatened, endangered, or sensitive plant or animal species, including the chinook salmon. The Forest Service summarized its findings in Environmental Impact Statements ("EISs"), and issued Records of Decisions ("RODs") for those EISs on November 30, 1990. On September 19, 1991, the Forest Service awarded the Grouse timber sale to Intervenor/Appellee Shearer Lumber Products, and on September 27, 1991, the Service awarded the Noble sale to Shearer.

Prior to the award of these sales, however, the National Marine Fisheries Service ("NMFS") published a proposal to list the Snake River chinook salmon as a threatened species. Subsequently, about 7 months after the sales were awarded, the NMFS determined that the salmon were in fact a threatened species and that they would be so listed effective May 22, 1992. When the salmon's listing as threatened became effective, the Nez Perce forest supervisor directed forest

1. ISC did not, however, address its ESA claims in its brief; accordingly, they will not be considered here.

rangers to determine whether current and proposed projects throughout the forest would affect fish habitat. Activities that were determined to have a possible adverse effect upon the listed salmon were discontinued.

In July 1992, the Forest Service completed new BAs for the Noble, Jack, and Grouse timber sales which analyzed the effects of the timber harvest on chinook salmon. The BAs considered the effects of possible sediment delivery into streams, the distance between the proposed activities and salmon habitat, and measures by which any potential harms might be mitigated. In September 1992, the Forest Service offered the Jack timber sale for bids; although Shearer was again the highest bidder, the Forest Service delayed awarding the sale in order to complete its consultation with the NMFS concerning the impact of the sale on the salmon.

In January 1993, the NMFS asked that all national forests affected by the listing of the salmon provide new information and reformat their BAs. The Forest Service complied; its findings that the activities were unlikely to affect the salmon, however, remained unchanged. In August 1994, the NMFS issued a biological opinion for the proposed projects which stated that the actions at issue "are not likely to jeopardize the continued existence of Snake River spring/summer chinook." On February 1, 1995, the Jack sale was awarded to Shearer. The Grouse sale was, at the time the briefs were filed, complete, and the Noble sale was near completion.

ISC filed its complaint in district court on September 14, 1993, alleging that the Forest Service violated NEPA, ESA, NFMA, and the Clean Water Act when it issued its RODs for the timber sales. ISC cited numerous deficiencies in the Forest Service's analysis of the environmental impact of the timber sales; specifically, it claimed that the Forest Service failed to monitor animal habitat and populations, that the information provided in the BAs was inaccurate, that the Service did not adopt a monitoring plan for animal habitat, that it failed to analyze the effects of the sales on biological diversity and recreational activities in the area, and finally, that it violated the Clean Water Act by failing to comply with state water quality standards. The government moved to dismiss the Clean Water Act claim, however, maintaining that ISC had failed to comply with the Act's requirement that a party bringing claims under the Act provide the EPA notice of its intent to sue. 33 U.S.C. § 1365(b)(1),(2). ISC contended, however, that it was suing for violations of state water quality standards from nonpoint pollution sources;[2] it maintained that since that claim only could be brought pursuant to the Administrative Procedure Act, it was not required to comply with the Clean Water Act's 60–day notice provision. *See Oregon Natural Resources Council v. United States Forest Service*, 834 F.2d 842, 849–52 (9th Cir.1987). The claim at issue, however, was entitled "Violation of the Clean Water Act," and nowhere did it mention the Administrative Procedure Act. The court dismissed the claim.

The court also granted ISC a preliminary injunction on the basis of their ESA and NEPA claims, ordering the Forest Service to refrain from "engaging in or authorizing any road building or road reconstruction, and from the sale or harvesting of any timber in the Cove/Mallard areas until final resolution of this action." The court then ordered that dispositive motions on the issue be filed no later than March 25, 1994.

On March 29 1994, four days after dispositive motions were due, ISC moved to amend its complaint in order to change its Clean Water Act claim to an Administrative Procedure Act claim. ISC maintained that its earlier failure to state that it was suing under the Administrative Procedure Act "was, at most, a technical flaw." The court denied

---

2. A "point source" is "any discernible, confined and discrete conveyance, including but not limited to any pipe, ditch, channel, tunnel, conduit, well, discrete fissure, container, rolling stock, concentrated animal feeding operation, or vessel or other floating craft, from which pollutants are or may be discharged." 33 U.S.C. § 1362(14).

While the Clean Water Act provides no specific definition for nonpoint source pollution, we have described it as "pollution that does not result from the 'discharge' or 'addition' of pollutants from a point source." *Oregon Natural Resources Council v. United States Forest Service*, 834 F.2d 842, 849 n. 9 (9th Cir.1987).

the motion to amend, claiming that ISC was attempting merely to circumvent the Clean Water Act's notice provisions.

Moreover, as the court previously had denied a motion by ISC to file an overlength brief in support of summary judgment, and had given it additional time to file a brief that conformed with the 20 page limit established by local rules, it subsequently granted the government's motion to strike those portions of the revised ISC brief that incorporated by reference 69 additional pages of argument. Concluding that ISC had deliberately violated the court's order limiting the length of briefs, the court sanctioned ISC's counsel, admonishing him to refrain from similar conduct in the future.

On December 5, 1994, the district court entered summary judgment in favor of the Forest Service, and lifted the preliminary injunction. ISC now appeals, and we affirm.

## STANDARD OF REVIEW

■ A grant of summary judgment is reviewed de novo. *Warren v. City of Carlsbad,* 58 F.3d 439, 441 (9th Cir.1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 1261, 134 L.Ed.2d 209 (1996). The appellate court's review is governed by the same standard used by the trial court under Federal Rule of Civil Procedure 56(c). *Jesinger v. Nevada Federal Credit Union,* 24 F.3d 1127, 1130 (9th Cir.1994).

Pursuant to the Administrative Procedure Act, agency decisions may be set aside only if "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(a); *Idaho Farm Bureau Fed'n v. Babbitt,* 58 F.3d 1392, 1401 (9th Cir.1995).

■ Involuntary dismissals that are based on deficiencies in the pleadings are reviewed for an abuse of discretion. *In re Dominguez,* 51 F.3d 1502, 1508 n. 5 (9th Cir.1995). Leave to amend is generally within the discretion of the district court. *Rhoden v. United States,* 55 F.3d 428, 432 (9th Cir.1995). The district court's denial of a motion for leave to amend is reviewed for an abuse of discretion. *United States v. County of San Diego,* 53 F.3d 965, 969 n. 6 (9th

Cir.1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 183, 133 L.Ed.2d 121 (1995).

## DISCUSSION

### I. The NEPA and NFMA Claims

. ISC claims that the Forest Service failed to comply with NEPA's requirement that all information provided in NEPA documents be complete and accurate, 40 C.F.R. §§ 1502.16, 1502.24; it further maintains that the Service violated NFMA by failing to monitor adequately indicator, sensitive, and threatened and endangered species. 36 C.F.R. § 219.19(a)(6). We reject both of these contentions.

### A. NEPA Claims

#### 1. The "Hard Look" Inquiry

■ NEPA is a procedural statute. Its purpose is to ensure informed agency action. *Oregon Envt'l Council v. Kunzman,* 817 F.2d 484, 492 (9th Cir.1987). Accordingly, it requires only that the agency take a "hard look" at its decision, and not that environmental concerns trump all others. *Robertson v. Methow Valley Citizens Council,* 490 U.S. 332, 353, 109 S.Ct. 1835, 1847–48, 104 L.Ed.2d 351 (1989) (holding that NEPA requires neither that actions be taken to mitigate adverse effects of federal actions, nor that an EIS include an explanation of what measures will be employed to mitigate adverse environmental impacts).

■ ISC provides little support for its claim that information contained in the EISs is inaccurate. Moreover, while a number of its allegations about the accuracy of specific points in the EIS are belied by the record, this court need not "fly-speck" the document and "hold it insufficient on the basis of inconsequential, technical deficiencies," but will instead employ a "rule of reason" to determine whether it contains "a reasonably thorough discussion of the significant aspects of the probable environmental consequences." *Oregon Envt'l Council,* 817 F.2d at 492 (citations omitted). In this matter, it is clear that the Forest Service took the required "hard look" at the environmental consequences of the proposed timber harvests and sales. The Service examined the effect that

the actions would have on the chinook salmon and determined that it was unlikely that the fish would be adversely affected, a finding in which the NMFS concurred. The Service also examined the effect of the proposed harvests and sales upon threatened, endangered and sensitive species. Both the Cove and Mallard EISs broadly describe the environments that would be affected by the proposed actions, and further include a comprehensive discussion of the impacts of the actions on recreational activities, visual quality, cultural resources, wilderness, and wildlife. In addition, both the EISs consider the cumulative impacts of the proposed activities, including the effects upon each of the two areas of the road construction and timber harvests occurring in the watersheds of the other. *Cf. Oregon Natural Resources Council v. Marsh,* 52 F.3d 1485 (9th Cir.1995) (holding that the Army Corps of Engineers violated NEPA by narrowly limiting scope of discussion of cumulative impacts).

Furthermore, the Forest Service discussed the impact of the projects on roads, trails, trailheads, fishing, hunting, commercial outfitting services, and snowmobile and off-highway wheeled vehicles. The consequences for sensitive species were also examined, as were those for big game indicator species such as the Rocky Mountain elk. The EISs also include analyses of old-growth and snag-dependent species and habitat, and consider the risk of mass wasting (landslide) that is posed by the timber harvest.

We are not prepared to hold that this fairly exhaustive discussion is inadequate, and we reject ISC's claims on this point.

### 2. The Listing of the Salmon as a Threatened Species

■ NEPA requires that a Supplemental EIS ("SEIS") be prepared when there are "significant new circumstances or information relevant to environmental concerns and bearing on the proposed action or its impacts." 40 C.F.R. § 1502.9(c)(1)(ii). ISC maintains that the listing of the spring/summer and fall chinook salmon as a threatened species constitutes a "new circumstance," and that a SEIS was thus required.

As the government notes, however, the new listing changed "the legal status of the salmon, but it did not change the biological status." *Forest Conservation Council v. Espy,* 835 F.Supp. 1202, 1216 (D.Idaho 1993), *aff'd,* 42 F.3d 1399 (9th Cir.1994). The Forest Service previously determined that it was unlikely that the proposed actions would have a negative impact on the salmon; as this finding was not premised on the salmon's non-threatened status, the determination that the salmon were in fact threatened did not constitute new information that would show that the timber harvests and sales were likely to " 'affec[t] the quality of the ... environment' in a significant manner or to a significant extent not already considered." *Marsh v. Oregon Natural Resources Council,* 490 U.S. 360, 374, 109 S.Ct. 1851, 1859, 104 L.Ed.2d 377 (1989) (citations omitted). Thus, we hold that the determination by the NMFS that the spring/summer and fall chinook salmon were a threatened species was not a "significant new circumstance[ ]" that would require a SEIS.

### B. NFMA Claims

■ ISC claims that the Forest Service failed to comply with NFMA's requirement that species in the areas affected by the proposed activities be monitored adequately. 36 C.F.R. § 219.19(a)(6). Once again, ISC provides little support for its allegations. Animal species and habitat in the analysis areas are being monitored through the use of fish analyses and surveys, elk summer habitat analyses, watershed monitoring, and threatened and endangered species surveys. The Forest Plan also requires fish and water quality monitoring and the observation of fish habitat trends, population trends of indicator wildlife and fish species, and analyses of the impacts of the proposed activities on soils and water quality. Moreover, the impacts of the proposed sales on salmon and other threatened, endangered, and sensitive species and their habitat are also discussed. There is little in the record to support ISC's claims that the monitoring plans were inadequate.

■ Accordingly, ISC's NEPA and NFMA challenges must be rejected; more-

over, to the extent that ISC bases those challenges on the Forest Service's failure to comply with Forest Service Manual requirements, we note that those requirements "do not have the independent force and effect of law." *Western Radio Services Co. v. Espy,* 79 F.3d 896, 901 (9th Cir.1996). Thus, we affirm the district court's grant of summary judgment on the NEPA and NFMA claims.

## II. *Dismissal of the Clean Water Act Claim and Denial of the Motion to Amend*

■ While ISC's original complaint did discuss the Forest Service's alleged violation of state water quality standards, we think that the district court's dismissal of the claim was appropriate, as nowhere in that claim did ISC discuss the Administrative Procedure Act, the statute which would entitle ISC to relief from the government's alleged violation of state water quality standards. *See* Fed. R.Civ.P. 8(a) ("A pleading which sets forth a claim for relief ... shall contain ... a short and plain statement of the claim showing that the pleader is entitled to relief.")

■ Moreover, because of ISC's inexplicably late filing of its motion to amend, we find that the district court's denial of the motion was proper. After ISC filed its initial complaint, the Forest Service invited ISC to amend its complaint to state a claim under the Administrative Procedure Act. However, it was not until six weeks after the claims were dismissed, and four days after dispositive motions were due, that ISC did so.

In *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962), the Supreme Court held that "[i]f the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits [only] [i]n the absence of ... undue delay, bad faith or dilatory motive, ... repeated failure to cure deficiencies by amendment previously allowed, [or] undue prejudice to the opposing party by virtue of allowance of the amendment." *Id.* at 182, 83 S.Ct. at 230. The proposed amendment is certainly marred by the first factor, as ISC previously had an opportunity to timely amend its complaint and it failed to

do so. Accordingly, we affirm the district court's denial of leave to amend.

## III. *The Overlength Brief*

■ ISC argues that Rules 7(b)(2) and 10(c) of the Federal Rules of Civil Procedure mandate that its incorporations be allowed. Rule 7(b)(2), however, merely provides that "[t]he rules applicable to captions and other matters of form of pleadings apply to all motions and other papers provided for by these rules," while Rule 10(c) simply states that "[s]tatements in a pleading may be adopted by reference in a different part of the same pleading or in another pleading or in any motion." Fed.R.Civ.P. 7(b)(2), 10(c). Nevertheless, ISC attempts to construct a relationship between Rules 7(b)(2) and 10(c) which, ostensibly, would provide some support for its argument. ISC conjoins Rule 10(c)'s provision regarding the adoption by reference of material from pleadings with Rule 7(b)(2)'s statement that the rules applicable to pleadings shall "apply to all motions and other papers." Born of this rather unique union is ISC's peculiar argument: since 10(c) allows the adoption by reference of material from pleadings, and 7(b)(2) holds that the rules applicable to pleadings shall apply to all other papers (such as briefs), the two rules when read together should, according to ISC, allow the incorporation of substantive material from briefs.

Rule 7(b)(2), however, holds only that the rules that apply to the *form* of pleadings shall apply to "other papers." Thus, the reach of the 10(c) provision permitting the adoption by reference of material from pleadings cannot be extended by 7(b)(2) to include the adoption of *substantive material* in "other papers." Accordingly, the incorporation of substantive material by reference is not sanctioned by the federal rules at issue, and the district court did not abuse its discretion in striking the incorporations.

## CONCLUSION

While we acknowledge the necessity of preserving our national forest environments, ISC has failed to demonstrate that the Forest Service neglected to give due regard to that goal when authorizing the actions being

challenged in this case. Accordingly, the judgment of the district court is AF-FIRMED.