Max & Lilli CLAUSEN, dba Clausen
Oysters, Plaintiffs,

v.

M/V NEW CARISSA, in rem, Taiheiyo Kaiun Co., Ltd., Green Atlas Shipping, S.A., TMM Co., Ltd., Benjamin Morgado, The Britannia Steam Ship Insurance Association Limited, William Milwee, Gallagher Marine Systems, Inc., and Does 1 through 50, Defendants.

No. Civ. 00–6078–TC.

United States District Court,
D. Oregon.

Feb. 14, 2001.

David C. Tarshes, Davis Wright Tremaine, Seattle, WA, Eric L. Dahlin, Everett W. Jack, Jr., Davis Wright Tremaine, LLP, Portland, OR, James P. Walsh, David Wright Tremaine LLP, San Francisco, CA, for plaintiffs.

Craig C. Murphy, Wood Tatum Sanders & Murphy, Portland, OR, for M/V New Carissa.

Craig C. Murphy, Robert I. Sanders, Todd A. Zilbert, Wood Tatum Sanders & Murphy, Portland, OR, for Taiheiyo Kaiun Co., Ltd.

Robert I. Sanders, Todd A. Zilbert, Wood Tatum Sanders & Murphy, Portland, OR, for Green Atlas Shipping, SA, TMM Co., Ltd.

## ORDER

COFFIN, United States Magistrate Judge.

Presently before the court are plaintiffs' motion (# 98) for leave to file an amended complaint, defendant Morgado's motion (# 63) for summary judgment on plaintiffs' fifth cause of action, defendants' motion (# 68) to bifurcate the trial, defendants' motion (# 94) to strike plaintiffs' demand for a jury trial, defendant Morgado's motion (# 90) to dismiss general maritime claims and strike plaintiffs' prayer for punitive damages, defendants' motion (# 91) for reconsideration and to strike prayer for punitive damages, and defendants' motion (# 96) for partial summary judgment on claims under ORS 468B.300 *et. seq.* (Oregon Oil Spillage Act).

### 1. MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT

Plaintiffs have moved to amend their complaint to delete the M/V New Carissa as a defendant and thereby remove the in rem claim, to delete the reference to Fed. R.Civ.P. 9(h) to avoid admiralty jurisdiction, and to add Oregon common law claims of nuisance, negligence and trespass.

Plaintiffs argue that leave to amend "should be freely given when justice so requires." The purpose of these amendments is, according to plaintiffs, to "preserve its right to a jury trial". (# 99, page 3).

Defendants argue that plaintiffs' motion to amend should be denied because plaintiffs have already elected to proceed in admiralty and have thereby foreclosed their right to a jury trial. Also, defendants contend that the proposed amended complaint does not comply with Oregon pleading rules for punitive damages, and will unnecessarily complicate the trial.

The general policy under the federal rules is that leave to amend a pleading "shall be freely given when justice so requires," Fed.R.Civ.P. 15(a), and the policy is to be applied liberally. *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074

(9th Cir. 1990). Amendments "seeking to add claims are to be granted more freely than amendments adding parties", *Union Pacific Railroad Co. v. Nevada Power Company*, 950 F.2d 1429, 1432 (9th Cir. 1991), and the court's discretion to deny leave to amend is more broad where plaintiff has previously filed an amended complaint. *Simon v. Value Behavioral Health, Inc.*, 208 F.3d 1073 (9th Cir. 2000).

■ Over time, courts have identified the following factors that may, either alone or in combination, justify denying leave to amend a pleading. Those factors include (1) futility of amendment; (2) prejudice to the opposing party; (3) undue delay; (4) bad faith or dilatory motive; and (5) repeated failure to cure deficiencies by previous amendment. *Price v. Pinnacle Brands, Inc.*, 138 F.3d 602, 608 (5th Cir. 1998); *Moore v. Kayport Package Express*, 885 F.2d 531, 538 (9th Cir. 1989). The granting or denial of leave to amend rests in the sound discretion of the trial court. *Swanson v. United States Forest Service*, 87 F.3d 339, 343 (9th Cir. 1996).

### a. Futility of Amendment

■ Leave to amend may be denied if the proposed amendment is futile or would be subject to dismissal. *Saul v. United States*, 928 F.2d 829, 843 (9th Cir. 1991).

### (1). Punitive Damages Under State Law

The defendants contest the addition of claims which can support a prayer for punitive damages under state law. The main arguments have addressed procedure, that is, does a plaintiff need to plead punitive damages in a law state claim in accordance with ORS 18.535 or under only the general notice pleading required of the federal rules.

Since the viability of plaintiffs' prayer for punitive damages is part of the decision whether to allow amendment, and in order to meet the directive of Fed.R.Civ.P. 1, the court has directed the plaintiffs, pursuant to the court's authority under Fed.R.Civ.P. 16, to provide the court with a clear statement of the evidence that would be offered at trial to support any claim for punitive damages. Plaintiffs have complied with the court's order, and defendants have responded as authorized by that same order.

The standard of proof for punitive damages under Oregon law is set forth in ORS 18.537(1):

> Punitive damages are not recoverable in a civil action unless it is proven by clear and convincing evidence that the party against whom punitive damages are sought has acted with malice or has shown a reckless and outrageous indifference to a highly unreasonable risk of harm and has acted with a conscious indifference to the health, safety and welfare of others.

Plaintiffs' evidence includes the fact that Morgado anchored the New Carissa off a lee shore when he was aware of warnings of hazardous weather conditions; that he did not take on additional ballast even though he was advised "to have the vessel in full ballast to improve its handling inbound" by the pilot who was to board her in the morning and pilot her in to port; that he should have used more anchor chain; that his drag circle drawing was in error by being too small, thus failing to alert the crew that the anchor was dragging; that he opened the cargo hatches in spite of high winds and thus increased the sail effect on the vessel; and that he gave a hard right rudder command when attempting to weigh anchor and regain control of the vessel, which resulted in additional wind resistance.

Defendants have offered evidence that the ship's Master, Captain Morgado, attempted to contact experienced local pilots at least four times immediately after an-

choring in order to notify them of his arrival and position, but that they did not respond. When he finally spoke with one, he received no caution or warning about his anchorage. Also, there is testimony from experienced pilots that ships frequently anchored at the location where the New Carissa anchored, and that it was marked as a place to anchor on area navigational charts. Further, two Coast Guardsman on lookout duty saw the New Carissa at anchor and were not alarmed by her location.

Defendants have also offered evidence that the weather condition on the morning of February 4, 1999, that drove the vessel to shore was not forecast and did occur suddenly. Further, defendants have offered evidence from treatises on seamanship that state that the length of anchor chain was adequate, and the two experienced pilots concur. There is no evidence that the anchor was dragging prior at any time throughout the night, or prior to the actions taken in the morning to prepare the ship for entry into port. There is evidence that the dragging anchor was noticed almost immediately and that attempted corrective measures were undertaken in a timely fashion.

Defendants' evidence shows that the act of opening the hatches to prepare for entering port was carried out as part of the plan initiated by the pilot rather than the captain, and that the pilot did not notify the ship of any change in plans until after the hatches had been opened.

■ While evidence must be considered in the light most favorable to plaintiffs, the court must engage in some balancing to determine whether the evidence presents a genuine issue of material fact sufficient to meet the heightened burden for punitive damages. Under Oregon law, the plaintiff must offer proof of reckless and outrageous indifference to a highly unreasonable risk of harm, **and** that defendant act-

ed with a conscious indifference to the health, safety and welfare of others. Further, the evidence must be such that a reasonable jury could find that it is "clear and convincing" evidence of such conduct.

■ In this case, plaintiffs have failed to offer any credible proof of reckless or outrageous indifference. Further, the evidence shows that the hatches were open because of the expected arrival of the pilot, and it was only after pursuing the course of action dictated by the pilot did the captain receive a call from the pilot announcing that his arrival would be delayed. That, coupled with the unexpected weather, could not support a finding of reckless or outrageous indifference to a highly unreasonable risk of harm, or conscious indifference to the health, safety and welfare of others.

As to whether Morgado issued the order for hard right rudder, there is no direct evidence that he did so. While plaintiffs cite circumstantial evidence that the ship was initially facing into the wind (heading southwest) and ultimately was headed north, defendants counter that the shift was caused by action of the wind against the ship, coupled with unexpected swells resulting in the propellers lifting out of the water. Certainly this evidence cannot meet the clear and convincing standard, or support a finding of reckless or outrageous indifference. The same must be said of failing to take on more ballast. The ship was already carrying a great deal of ballast, and the evidence strongly suggests that it would not have been wise to add to what was already in place.

Nothing that plaintiffs have offered gives this court reason to believe that any reasonable factfinder could find that Captain Morgado acted with the requisite indifference that would support a claim for punitive damages even under a preponderance standard. As the prayer for punitive

damages could not withstand a motion for summary judgment, it is futile to allow plaintiffs' amendment on the basis of the availability of damages not otherwise available.

### (2). Right to Trial by Jury on State Law Claims

 Because plaintiff cannot seek punitive damages on his proposed state law claims, those claims would only delay proceedings and cause unnecessary expense at trial. Simply stated, there is no purpose in trying claims for negligence when those same claims are subject to strict liability under the statutes relied upon by plaintiffs. However, plaintiffs have argued that these claims would preserve their right to a jury trial should this court rule that (1) the Oil Pollution Act (OPA) preempts plaintiffs' general maritime claims; and, (2) the allegations under the OPA are not analogous to claims at common law and therefore do not entitle plaintiffs to a jury trial.

Plaintiffs note that the parties dispute whether a claim before the court by virtue of supplemental jurisdiction can provide a right to a jury trial when the federal statutory claim does not, but contend that the point is immaterial because both the state law and federal statutory claims are analogous to claims at common law.

If these state law claims were plaintiffs' only basis for imposing a jury trial on defendants for claims that were brought by plaintiffs under federal laws that did not otherwise allow a jury trial, I would not allow plaintiffs' amendment because it would cause undue delay and expense, and otherwise overshadow the federal claims. If, on the other hand, a separate basis for a jury trial is found under federal law, then these claims would serve no purpose in this case, and would cause undue delay and expense.

### (3) In Rem Claim and Jurisdiction Under Fed.R.Civ.P. 9(h)

 Defendants argue that these amendments should not be allowed because plaintiffs have elected to proceed under the court's admiralty jurisdiction and have benefitted from the exercise of admiralty jurisdiction. Defendants' arguments are not persuasive. First, plaintiffs at all times have asserted their right to a jury trial, which put all defendants on notice that the invocation of admiralty jurisdiction was only with respect to some of plaintiffs' claims. This is consistent with the assertion of jurisdiction in plaintiffs' complaint. Second, while plaintiffs may have realized some minuscule benefit from having the right to arrest the remains of the New Carissa through their in rem claim, that arrest was never effected, and that distinguishes the present case from *Jose v. M/V Fir Grove*, 765 F.Supp. 1037 (D.Or.1991). Also, plaintiffs' willingness to abandon this otherwise extremely speculative benefit is a clear indication that any benefit that could be obtained would be minimal.

 The law is clear that admiralty jurisdiction may control only part of the claims asserted in one action, "assuming the existence of a non-maritime ground for jurisdiction." *Ghotra v. Bandila Shipping, Inc.*, 113 F.3d 1050, 1055 (9th Cir. 1997). Here plaintiff has asserted jurisdiction under the OPA, 33 U.S.C. § 2707, as well as Fed.R.Civ.P. 9(h).

However, the proposed amendments are not futile because they do benefit the case by eliminating one in rem claim of questionable value and also to clarify the issue of plaintiffs' right to a jury trial.

### b. Prejudice to Opposing Party

This is by far the most common reason for denying leave to amend. *Jackson v. Bank of Hawaii*, 902 F.2d 1385, 1387 (9th

Cir.1990). As discussed above, defendants can show no prejudice resulting from plaintiffs' amendment deleting the in rem claim against the New Carissa and the jurisdictional reference to Fed.R.Civ.P. 9(h).

### c. Undue Delay

While undue delay is not usually sufficient by itself to support denial of leave to amend, it was the only reason cited in *Swanson v. United States, supra.* As discussed above, the proposed state common law claims would cause unnecessary delay and expense.

### d. Bad Faith or Dilatory Motive

The court does not believe that plaintiffs have acted in bad faith or with a dilatory motive in moving to amend their complaint. The jurisdictional and jury trial issues are not settled law, as shown by the recent case of *South Port.*

### 2. DEFENDANTS' MOTION TO RECONSIDER

■ After this court entered the Order of October 5, 2000, denying defendants' motion to dismiss plaintiffs' general maritime claims, the First Circuit decided *South Port Marine v. Gulf Oil,* 234 F.3d 58 (1st Cir.2000). Based on *South Port,* defendants have asked this court to reconsider its earlier Order. Defendants' motion to reconsider is granted. Upon reconsideration, I agree with defendants that the OPA has precluded an award of punitive damages under any general maritime or admiralty law theory for any claim for which the OPA could provide relief.[1] I also agree that the OPA provides the exclusive federal remedy for property damage claims resulting from oil spills.

The trial court in *South Port* had focused on whether a jury trial was available to an OPA plaintiff, and devoted only one sentence to finding that Congress intended that the OPA should supplant existing general admiralty and maritime law. *South Port Marine v. Gulf Oil,* 56 F.Supp.2d 104, 106 (D.Me.1999) ("the Oil Pollution Act preempts any federal common-law (i.e., general maritime law) claims ... and ... punitive damages are not available under the Oil Pollution Act."). This ruling was made only after the jury was empaneled and defendant in that case had unexpectedly conceded liability under the OPA.

The First Circuit agreed that the OPA did not provide for punitive damages, and added a heading within its opinion stating that "Congress Intended the OPA To Be the Exclusive Federal Law Governing Oil Spills." *South Port Marine v. Gulf Oil,* 234 F.3d 58, 65 (1st Cir.2000).[2] As part of that discussion, the court noted the interplay between strict liability for polluters, a comprehensive list of injuries for which compensation is available, an opportunity for the polluter to limit its own liability, and a corresponding opportunity for the injured party to overcome that limitation with a showing of gross negligence.[3] It is

---

1. The damages available under the OPA are set out in 33 U.S.C. § 2702(b). 33 U.S.C. § 2701(5).

2. Plaintiff in *South Port* did not actually plead a general maritime claim, so any application to a claim, rather than the prayer for relief (i.e., punitive damages), was not based on any facts of the case which could provide guidance in determining whether any particular claim under general maritime law might co-exist with an OPA claim.

3. Defendant ship owners and insurers agreed, at oral argument, that they would not attempt to invoke any statutory limitation on damages in this case. *See* 33 U.S.C. § 2704.

This concession, when coupled with dismissal of plaintiffs' general maritime claim, obviates any need for proof of negligence at trial.

the relationship between these statutory provisions that leads to the conclusion that Congress intended OPA defendants not be subject to punitive damages for any property damage claim under federal law arising out of an oil spill.[4]

It is important to note that damages available under the OPA are only for injury to property and business. If, for example, an oil spill resulted in personal injury or loss of life, then punitive damages would presumably be available for any general maritime claim not otherwise preempted by federal statute (other than the OPA).

In this case, the application of the OPA's limitation on damages appears to make plaintiffs' general maritime claim for negligence superfluous. Why should plaintiffs' attempt to prove negligence when success on their OPA claim will provide identical remedies and not require proof of negligence? The continued presence of the claim gives plaintiffs no apparent benefit. Plaintiffs have attempted to distinguish an additional purpose for the claim in a supplemental memorandum arguing that dismissal of their general maritime negligence claim would effectively immunize Captain Morgado from liability under federal law.

Under the statute, "each responsible party for a vessel . . . is liable for the removal costs and damages." 33 U.S.C. § 2702(a). A responsible party for a vessel is "any person owning, operating, or demise chartering the vessel." 33 U.S.C. 2701(32). The statute does not provide a separate definition for the term "operator", but under the common meaning of the word it is hard to imagine that the Master of a vessel would not be the operator of the vessel.

This claim is reminiscent of plaintiffs' in rem claim against the vessel, except that it does not even provide plaintiffs with even theoretical leverage for negotiation. This appears to be the logical basis for the *South Port* conclusion that the OPA is the exclusive federal remedy for property damage resulting from oil spills, and that logic is persuasive when applied to the facts of this case.[5]

## 2. *PLAINTIFFS' RIGHT TO A JURY TRIAL*

 The parties agree that if plaintiffs' OPA claim is analogous to a claim at common law, then the Seventh Amendment right to a jury trial attaches.

4. It is unreasonable to read the statute as authorizing punitive damages when Congress considered the additional "gross negligence" standard as a means for making the responsible party liable for all actual damages, and allowing a merely negligent responsible party to limit its liability and, for all practical purposes, receive the unbargained-for benefit of excess insurance from the government.

5. As discussed above, the only remedy a general maritime claim adds to plaintiffs' OPA claim would be in the area of punitive damages. Even if *South Port* is incorrect in its analysis of this issue, I fail to see any prejudice to plaintiffs in this case because their evidence for punitive damages in their general maritime claim would be the same as the proof offered on the state law claim. While

the federal standard for punitive damages is lower than that under Oregon law, (i.e., preponderance of the evidence proving conduct that is malicious or in reckless disregard of a plaintiff's rights), plaintiffs' evidence is insufficient to put the issue before a jury. *See e.g., Pacific Mutual Life Insurance Co. v. Haslip,* 499 U.S. 1, 111 S.Ct. 1032, 113 L.Ed.2d 1 (1991); *Morgan v. Woessner,* 997 F.2d 1244 (9th Cir.1993). Plaintiffs have not come forward with evidence to show reckless or malicious conduct, or any conduct that should be "punished" or could or would be deterred in the future. Plaintiffs must remember "that punitive damages are not to compensate the plaintiff, but to punish and deter the defendant and others from such conduct in the future." *Haslip,* 499 U.S. at 16, 111 S.Ct. 1032.

Plaintiffs characterize the oyster operation as farming, i.e., the oysters are a crop that is planted in the ground, cultivated and harvested, albeit that the ground in which they are planted is below the high water mark. *See Moore v. Hampton Roads Sanitation District,* 557 F.2d 1030 (4th Cir.1976).

Defendants characterize the action as arising in admiralty, as oysters are shellfish and fishing is traditionally a maritime activity.

While *South Port* provides a clear and detailed analysis of the availability of a jury trial for an OPA claim that is analogous to a common law claim as that law existed at the time of the adoption of the Seventh Amendment, it does not provide any guidance in applying that analysis to the facts of this case. There the court decided that a dock was "an extension of the land" and there is ample precedent for such a finding. Here we are caught in the cross-currents of time, faced with the existence of oil spills, oyster farming and leased tidelands which all post-date the law at the time of the ratification of the Seventh Amendment, but which are nonetheless activities which generally occur within the physical bounds of the realm of admiralty. Case law makes it clear that the fundamentals of admiralty jurisdiction do not evolve to keep pace with changing human activities when determining whether a plaintiff has the right to a jury trial under the Seventh Amendment.

At oral argument, the parties agreed that if a rice crop were planted in tidelands, that would be an extension of the land. However, the harvesting of kelp, which is attached to the sea bed, could be distinguished because it is not planted but

instead is wild, and also perhaps because while that activity is licensed, the sea-bed itself is not leased.

The analogy to agriculture is more persuasive than that of fishing. Therefore, plaintiffs are entitled to a jury trial on their OPA claim.[6]

Because the case will be tried to a jury, defendants' motion to bifurcate the trial is denied. Assuming that causation was proven, it would be impractical either to re-empanel the jury at a later time to determine damages. However, it would be equally unworkable to try the two parts of the case to different juries.

## 3. DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

Defendant Morgado has moved for summary judgment on plaintiffs' state statutory claim on two grounds. First, the statute imposes liability on the "person having control over oil ... immediately prior to entry of such oil into the navigable waters". ORS 468B.300(21). Morgado argues that he did not have control of the oil immediately prior to its release. Second, Morgado argues that the damages available for claims under ORS 468B.300 do not include attorney fees unless the claim itself is for $5,500 or less.

### a. Standard of Review

A party is entitled to summary judgment as a matter of law if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show there is no genuine issue as to any material fact." Fed. R.Civ.P. 56(c); *Bhan v. NME Hosp's, Inc.,* 929 F.2d 1404, 1409 (9th Cir.) *cert. denied,*

---

**6.** Because of the uncertainty of whether damage to an oyster farm sounds in law or in admiralty, the court will make separate findings and conclusions. If the court's findings coincide with the jury's, the issue will be

moot. If the findings differ, and the Court of Appeals agrees with defendants that the plaintiffs were not entitled to a jury trial, there will be no need for a new trial or a remand.

502 U.S. 994, 112 S.Ct. 617, 116 L.Ed.2d 639 (1991). The moving party must carry the initial burden of proof. This burden is met through identifying those portions of the record which demonstrate the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–24, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Once the initial burden is satisfied, the burden shifts to the opponent to demonstrate through the production of probative evidence that there remains an issue of fact to be tried. *Id.* The facts on which the opponent relies must be admissible at trial, although they need not be presented in admissible form for the purposes of opposing the summary judgment motion. *Id.*

The court must view the evidence in the light most favorable to the nonmoving party. *Bell v. Cameron Meadows Land Co.*, 669 F.2d 1278, 1284 (9th Cir.1982). All reasonable doubt as to the existence of a genuine issue of fact should be resolved against the moving party. *Hector v. Wiens*, 533 F.2d 429, 432 (9th Cir.1976). The inferences drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. *Valandingham v. Bojorquez*, 866 F.2d 1135, 1137 (9th Cir.1989). Where different ultimate conclusions may be drawn, summary judgment is inappropriate. *Sankovich v. Insurance Co. Of North America*, 638 F.2d 136, 140 (9th Cir.1981).

Deference to the non-moving party does have some limit. The non-moving party "must set forth specific facts showing that there is a *genuine* issue for trial." Fed. R.Civ.P. 56(e) (emphasis added). Where "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corporation*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). The "mere existence of a scin-

tilla of evidence in support of the plaintiff's position would be insufficient." *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *Id.* at 248, 106 S.Ct. 2505. However, trial courts should act with caution in granting summary judgment, and may deny summary judgment "in a case where there is reason to believe that the better course would be to proceed to a full trial." *Anderson*, 477 U.S. at 255, 106 S.Ct. 2505.

### b. Discussion

#### (1) Immediate Control

ORS 468B.305(1) provides that

[i]t shall be unlawful for oil to enter the waters of the state from any ship ... regardless of the cause of the entry or the fault of the person having control over the oil, or regardless of whether the entry is the result of intentional or negligent conduct, accident or other cause.

A " '[p]erson having control over oil' includes but is not limited to any person using, storing or transporting oil immediately prior to entry of such oil into the navigable waters of the state, and shall specifically include carriers and bailees of such oil." ORS 468B.300(21).

■ Morgado argues that he was not in control immediately prior to the oil spill because the Coast Guard had evacuated him from the vessel on February 5, 1999, and the oil did not start leaking until February 8, 1999. During the interim three-day period, the Coast Guard had "control" of the vessel. Further, he contends it was the Coast Guard's attempt to burn the oil on February 11, 1999, that caused other oil to be released.

The statute does not define "immediately prior." Morgado argues that the element of immediacy requires no interval of time or delay. Merriam Webster's Collegiate Dictionary 579 (10th ed.1996). To bolster this argument, he refers to a 1999 District of Oregon case which found that a 30 year delay between the discharge and the oil entering the water was not "immediate" as a matter of law. *Port of Portland v. Union Pacific Railroad Company,* 1999 WL 1080328, 1999 U.S. Dist LEXIS 18776 (D.Or.1999) ("it is difficult to determine who has control over a substance that has seeped for over 30 years").

In this case, Morgado can document a three-day period between his departure from the vessel and the discharge of oil. Under the circumstances of this case, the three-day interval is not sufficient to take the question from the jury. When Morgado left the New Carissa, the Coast Guard may have had "control" of the vessel in the sense that it had decision-making authority regarding attempts to minimize the pollution damage, but in any other sense of the word the sea and the weather were in command.

### (2) Attorney Fees as Damages

Under the Oregon Oil Spillage Act, damages are defined as "damages, costs, losses, penalties or attorney fees of any kind for which liability may exist under the laws of this state resulting from, arising out of or related to the discharge or threatened discharge of oil." ORS 468B.300(6).

■ Morgado relies on the phrase "for which liability may exist under the law of this state" to support his argument that no attorney fees are available under the Oregon Oil Spillage Act unless there is some separate authorization for those attorney

fees under the laws of Oregon apart from ORS 468B.300(6) and 468B.310(1).

Plaintiffs argue that the definition of damages under this statute clearly includes "attorney fees *of any kind* " (emphasis added) and those fees were intended to be included within the phrase "for the damages to persons or property, public or private, caused by [the oil spill]." ORS 468B.310(1).

If the court were to adopt defendant's reading of the statute, the only oil spill cases under Oregon law for which attorney fees would be available would be those for which the claims do not exceed $5,500.[7] There is no realistic possibility of such a case, which means that the legislature's inclusion of "attorney fees" as damages in oil spill cases is utterly meaningless. Defendant also attempted to argue that the legislature may have had some future legislation in mind which would then give the present statute some application, but this is equally irrational. Unless I am to assume that the legislature inserted "attorney fees of any kind" as part of its definition of damages for no practical purpose (other than confusion), this statute must be read to include attorney fees expended in the successful pursuit of remedies under the Oregon Oil Spillage Act.

### CONCLUSION

Plaintiffs' motion (# 98) for leave to file a second amended complaint is granted in part and denied in part. Plaintiffs shall file their second amended complaint, consistent with the terms of this order, within 10 days of the date of this order. Defendants' motions (# 63, # 68) are denied. Defendant Morgado's motion (# 90) is granted. Defendants' motion (# 91) for

---

7. Chapter 20 of the Oregon Revised Statutes generally provides for recovery of attorney fees. Under defendant's reading of the damages definition in the Oregon Oil Spillage Act, attorney fees would be available only under ORS 20.080, which provides for fees in property injury claims where the amount pleaded is less than $5,500.

reconsideration is granted. Upon reconsideration, plaintiffs' general maritime claim is dismissed. Defendants' motions (# 94, # 96) are denied.