Sidney Walter SCOTT, Petitioner–
Appellant,

v.

George BALDWIN, Superintendent,
Respondent–Appellee.

No. 99–35132.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted May 2, 2000

Filed Sept. 1, 2000

Wendy R. Willis, Assistant Federal Public Defender, Portland, Oregon, for the petitioner-appellant.

Brendan C. Dunn, Assistant Attorney General, Salem, Oregon, for the respondent-appellee.

Before: LAY,[1] TASHIMA and McKEOWN, Circuit Judges.

---

1. The Honorable Donald P. Lay, Senior United States Circuit Judge for the Eighth Circuit, sitting by designation.

LAY, Circuit Judge:

Sidney Walter Scott, an inmate at the Eastern Oregon Correctional Institution, brought a petition for a writ of habeas corpus under 28 U.S.C. § 2254. Scott claims that the Oregon Board of Parole and Post–Prison Supervision's (the Board) denial of biennial reviews of his status as a "dangerous offender" violates the *Ex Post Facto* Clause. The district court denied Scott's petition. Scott appealed to this court; we affirm the district court's order.

## I. Background

Scott was convicted in 1979 of first degree rape, attempted murder, and first degree sexual assault. Scott raped a child and crushed her head with a rock in a failed attempt to kill her. The trial court found Scott was a dangerous offender and, under Oregon's dangerous offender law, sentenced him to two thirty-year sentences with a fifteen-year minimum for each. *See* Or.Rev.Stat. § 144.228 (1999).

In 1979, Oregon law required the Board to order biennial physical and psychological examinations of every inmate labeled a dangerous offender. *See* Or.Rev.Stat. § 144.226 (1979). The Board would then conduct a hearing to determine whether to retain the dangerous offender designation. If the Board refused to lift the dangerous offender designation, the inmate was scheduled for a new hearing in two years. *See* Or.Rev.Stat. § 144.228 (1979).

In 1981, the Oregon Legislature amended Or.Rev.Stat. § 144.228 to provide fewer Board reviews for inmates labeled danger-ous offenders. The 1981 amendments eliminated biennial reviews for inmates designated dangerous offenders before the expiration of the mandatory minimum every inmate must serve.[2] The 1981 law allows dangerous offenders to petition for a hearing at any time, and such a request must be granted if "reasonable cause" exists to believe the convict is no longer dangerous.[3] Or.Rev.Stat. § 144.228(c) (1999).

In 1990, Scott received a psychological exam, and subsequently appeared before the Board. The Board refused to overturn the dangerous offender designation, and set his next reviewing hearing for 2009. Scott tried to get Oregon to provide him with biennial reviews of his dangerous offender status. *See e.g., Scott v. Board of Parole*, 117 Or.App. 170, 843 P.2d 959 (1992). After Oregon rejected his requests, Scott commenced the present habeas action. The district court rejected Scott's *ex post facto* claim.

## II. Discussion

■ The sole issue in this case is whether Oregon's refusal to grant Scott biennial reviews of his dangerous offender status before the end of his minimum term violates the *Ex Post Facto* Clause.[4]

Subsequent to briefing in this appeal, the United States Supreme Court, in *Garner v. Jones*, 529 U.S. 244, 120 S.Ct. 1362, 146 L.Ed.2d 236 (2000), provided guidance on a similar *ex post facto* issue arising from the state of Georgia. In *Garner*,

---

**2.** All inmates in Oregon must serve a mandatory minimum sentence. The trial court can impose such a minimum, as the trial court did in Scott's case. Otherwise, Oregon's parole matrix system imposes a minimum for every crime. The Board has the authority to override such a mandatory minimum.

**3.** The Board informed Scott in 1991 that "a statement from a psychiatrist or psychologist is required" before the Board would entertain his petition for an early parole consideration hearing. (Letter from Board, Ex. G at 1.)

Thus, he is required to get a psychologist's statement to provide "reasonable cause" for the Board to order a further psychological examination, so it can review his status as a dangerous offender at a parole consideration hearing. This is a change from the 1979 law, under which he would automatically receive biennial psychological reviews.

**4.** We hold that there was no procedural default or failure to exhaust.

Robert Jones was convicted of murder in 1982. Under Georgia law, Jones was entitled to a parole hearing seven years after his conviction and every three years afterward. *See id.* at 1366. In 1985, Georgia eliminated the mandatory three-year reviews, instead requiring that "reconsideration of those inmates serving life sentences who have been denied parole shall take place at least every eight years." *Id.* (citations omitted). After he was denied parole in 1989, Jones was informed that he would receive his next hearing in eight years. Jones filed a federal habeas action, arguing Georgia's refusal to grant him a three-year review violated the *Ex Post Facto* Clause.

In rejecting Jones's claim, the Court made clear that "[r]etroactive changes in laws governing parole of prisoners, in some instances, *may be* violative of [the *Ex Post Facto* Clause]." *Id.* at 1367 (emphasis added). The "controlling inquiry" is whether "retroactive application of the change [in state law] create[s] a 'sufficient risk of increasing the measure of punishment attached to the covered crimes.'" *Id.* (quoting *California Dep't of Corrections v. Morales*, 514 U.S. 499, 509, 115 S.Ct. 1597, 131 L.Ed.2d 588 (1995)).

The Court then held Georgia's revised law did not create "a significant risk of prolonging [Jones's] incarceration." *Id.* Although the change from three-year reviews to (a maximum of) eight-year reviews appeared to disadvantage Jones, two significant qualifications saved the law: (1) the Georgia Parole Board had broad discretion to set the reconsideration period, with eight years as the maximum, and (2)

the new Georgia rules allowed for expedited parole reviews in the event of changed circumstances. *See id.* at 1369. Thus, the Court held that Georgia had merely altered the procedure for exercising parole discretion, rather than the substantive standards for granting parole. *See id.*

In the present case, Scott argues that Oregon's 1981 amendments create a "significant risk" of increasing his incarceration period.[5] As the changes to the dangerous offender scheme add no time to Scott's sentence, he argues the lack of review potentially lengthens his sentence in three ways: (1) the Board is more likely to overturn the trial court's mandatory minimum if an inmate is no longer labeled a dangerous offender, (2) once an inmate is no longer labeled a dangerous offender, he is eligible for further reductions in his sentence based upon outstanding reformation, *see* Or.Rev.Stat. § 144.122, and (3) the elimination of biennial psychological examinations gives the Board less information with which to review his status.

As to Scott's first two arguments, while the elimination of biennial reviews may disadvantage Scott, such disadvantage is offset by the provision allowing him to apply for a hearing at any time. This provision, along with the requirement that the Board grant such a hearing if there is a reasonable cause to believe that the prisoner is no longer dangerous, makes the 1981 amendments merely procedural. The Board maintains the power to grant Scott a hearing if it believes he has a chance to succeed, yet saves valuable resources by eliminating *pro forma* hearings if there is no chance of success.

---

**5.** The Supreme Court in *Garner v. Jones*, 529 U.S. 244, 120 S.Ct. 1362, 146 L.Ed.2d 236 (2000), provided two methods for a convict to attack a parole change under the *Ex Post Facto* Clause. First, as discussed *supra*, the convict could show the new rule "by its own terms [creates] a significant risk" of increasing the punishment for the crime. *Id.* at 1369. If such a facial chal-

lenge fails, then the convict can still "demonstrate, by evidence drawn from the rule's practical implementation by the agency charged with exercising discretion, that its retroactive application will result in a longer period of incarceration than under the earlier rule." *Id.* Scott's argument is limited to a facial challenge of the rule. Thus, any argument that the practical implementation

 Scott's third argument, that the elimination of psychological examinations gives the Board less information to review his case with, has some force.[6] Scott's argument, however, is too speculative to survive *Jones*. Under Jones, "the focus of the *ex post facto* inquiry is not on whether a legislative change produces some ambiguous sort of 'disadvantage' but on whether any such change increases the penalty by which a crime is punishable." *Id.* at 1370 (quotation omitted). Scott can only speculate that a psychologist provided by the Board would conclude he is no longer dangerous, and that, in such a case, the Board would lift the mandatory minimum imposed by the trial court. Such a speculative argument cannot form the basis of an *Ex Post Facto* Clause violation.

For the above reasons, we hold that the 1981 amendments to the Oregon dangerous offender review system do not create a "significant risk" that Scott will serve a longer sentence. Hence, we hold the district court properly dismissed Scott's habeas petition.

of the rule disadvantages Scott is not before us.

6. Scott also argues that the elimination of psychological examinations provides him less therapeutic opportunities. Were we to accept this argument, a state could never change or eliminate prisoner rehabilitation programs. Scott does not point to any case holding that a reduction in access to therapy is an *ex post facto* violation, and we refuse to so hold.

7. After oral argument and submission of the case for decision, petitioner filed a "Motion for Remand and Order for District Court to Vacate Judgment and Allow Petitioner Leave to Amend Petition for Writ of Habeas Corpus." We deny the motion.

Petitioner wishes to amend his federal habeas petition to add an *Apprendi* claim that Oregon's dangerous offender statute, ORS §§ 161.725 and 161.735, is unconstitutional because it permits the maximum statutory sentence for a crime to be increased based on a finding by the court, *i.e.*, one not submitted to the jury and proven beyond a reasonable doubt. *See Apprendi v. New Jersey,* —— U.S.

### III. Conclusion

 The district court's order is AFFIRMED.[7]

——, 120 S.Ct. 2348, 2363–63, 147 L.Ed.2d 435 (2000). Assuming, as petitioner contends, that *Apprendi* establishes a new rule of constitutional law, we cannot assume, as petitioner does, that it should be retroactively applied under *Teague v. Lane,* 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989). *See also* 28 U.S.C. § 2241(b)(2)(A). Certainly, the *Apprendi* majority did not so state. But we need not decide that issue now.

We deny petitioner's motion to remand because, in the end, amending petitioner's federal habeas petition to allege an *Apprendi* claim would be futile. He cannot succeed on an *Apprendi* claim for the simple reason that it, obviously, has not been exhausted in state court. *See* 28 U.S.C. § 2254(b)(1)(A) (providing that a state prisoner's habeas petition "shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State"); *Jiminez v. Rice,* 222 F.3d 1210, 1212 (9th Cir.2000). It thus appears that petitioner's remedy is not to remand this case to district court and amend his present federal petition, but to seek permission to file a second or successive federal habeas petition, after exhausting his remedies in state court.