**Timothy C. McKETTRICK, Petitioner,**

v.

**James A. YATES, Warden, Respondent.**

**No. CV 05–03002–RGK (VBK).**

United States District Court,
C.D. California,
Western Division.

Oct. 6, 2008.

Timothy C. McKettrick, Imperial, CA, pro se.

Lance E. Winters, CAAG – Office of Attorney General of California, Los Angeles, CA, for Respondent.

## ORDER (1) ACCEPTING AND ADOPTING THE REPORT AND RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE, AND (2) DISMISSING THE FIRST AMENDED PETITION FOR WRIT OF HABEAS CORPUS

R. GARY KLAUSNER, District Judge.

Pursuant to 28 U.S.C. § 636, the Court has made a *de novo* review of the Petition for Writ of Habeas Corpus and First Amended Petition for Writ of Habeas Corpus ("First Amended Petition"), Respondent's Answer, Supplemental Brief and Supplemental Answer, Petitioner's Traverse and Supplemental Reply to Respondent's Answer, Petitioner's Objections to the Report and Recommendation, and all of the records herein and the Report and Recommendation of the United States Magistrate Judge ("Report").

**IT IS ORDERED** that: (1) the Court accepts and adopts the Report and Recommendation, and (2) Judgment be entered dismissing the First Amended Petition and the entire action with prejudice.

## REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

VICTOR B. KENTON, United States Magistrate Judge.

This Report and Recommendation is submitted to the Honorable R. Gary Klausner, United States District Judge, pursuant to the provisions of 28 U.S.C. § 636 and General Order 01–13 of the United States District Court for the Central District of California.

### INTRODUCTION

Petitioner, a California state prisoner proceeding *pro se,* filed a "Petition for Writ of Habeas Corpus by a Person in State Custody" ("Petition") pursuant to 28 U.S.C. § 2254 on April 22, 2005. Respondent filed an "Answer to Petition" ("Answer") on July 25, 2005. Petitioner filed an uncaptioned Traverse on December 27, 2005.

On January 23, 2007, the Court issued a Minute Order ordering Respondent to file a supplemental brief addressing the applicability of *Cunningham v. California,* 549 U.S. 270, 127 S.Ct. 856, 166 L.Ed.2d 856 (2007) on Petitioner's claim that the trial court imposed the upper term rather than

the middle term, based on aggravating factors not found by the jury or admitted by Petitioner.

On February 21, 2007, Respondent filed a Supplemental Brief.

On February 23, 2007, the Court issued a Minute Order ordering a Stay of the action and ordered Petitioner to return to state court to exhaust ground two in the California Supreme Court.

Petitioner filed a Petition for Writ of Habeas Corpus in the California Supreme Court, which was denied on September 25, 2007 with a citation to *People v. Duvall,* 9 Cal.4th 464, 474, 37 Cal.Rptr.2d 259, 886 P.2d 1252 (1995).

On October 26, 2007, Petitioner filed an "Amended Complaint" which the Court accepted for filing on November 6, 2007, and construed as a "First Amended Petition."

On January 22, 2008, the Court issued a Minute Order ordering Respondent to file a supplemental answer to the First Amended Petition.

On February 28, 2008, Respondent filed a Supplemental Answer.

On March 3, 2008, Petitioner filed a document entitled "Motion for Leave to Amend Rule 15a." Petitioner requests the Court to allow him to amend his Petition to include an ineffective assistance of counsel claim. On March 5, 2008, the Court issued a Minute Order ordering Respondent to file an opposition or statement of non-opposition to Petitioner's Motion to Amend within 30 days of the Minute Order. On March 25, 2008, Respondent filed an Opposition to Petitioner's Motion to Amend Petition.

On May 23, 2008, Petitioner filed a "Supplemental Reply to Respondent's Answer of Habeas Corpus."

Briefing having been deemed completed, the matter is ready for decision. Having reviewed the allegations of the Petition and the matters set forth in the record and the parties' filings, it is recommended that the Petition be denied and the matter be dismissed with prejudice.

### *PRIOR PROCEEDINGS*

Pursuant to a state jury trial, in January 2004 Petitioner was convicted of three offenses: (1) count one, evading an officer with willful disregard for the safety of persons or property (California Vehicle Code § 2800.2(a)); (2) count two, petty theft with a prior theft conviction (Cal.Penal Code § 666); and (3) count three, unlawful driving or taking of a vehicle (Cal. Vehicle Code § 10851(a)). Petitioner waived jury trial on prior conviction allegations. After a bench trial the court found true "strike" allegations that Petitioner had previously been convicted of robbery, a serious felony, and had served a prison term. The court sentenced Petitioner to an aggregate term of imprisonment of 8 years and 4 months. (Reporter's Transcript ("RT") 606–09, 611–12, 901–12; Clerk's Transcript ("CT") 43–46, 51–52, 119–21, 124–43).

Petitioner, represented by appointed counsel, appealed to the California Court of Appeal. By unpublished order filed December 2, 2004, the Court of Appeal affirmed the judgment of the trial court. (CT 159; Answer Ex. A; Respondent's Lodgment no. 3, 5). Petitioner filed a petition for review in the California Supreme Court. By order filed February 16, 2005, the California Supreme Court denied the petition without comment or citation to authority. (Answer Ex. B, C).

### *FACTUAL SUMMARY*

As found by the California Court of Appeal on direct review, the following facts support Petitioner's conviction:

In August 2003, Daniel Ochoa's white Buick Century automobile was stolen. When the car was recovered by police a

few weeks later, Mr. Ochoa noticed: the paint had been sanded; the front and trunk of the car were damaged; and the ignition switch was gone. Mr. Ochoa did not know [Petitioner]. Mr. Ochoa did not give [Petitioner] permission to take or drive the white Buick Century.

On September 6, 2003, Los Angeles County Deputy Sheriff Joseph Dominguez was on duty in a patrol car. Deputy Dominguez received a radio broadcast regarding someone possibly siphoning gasoline from a rental truck. A subsequent broadcast revealed that the individual left the area in a white sedan. That white car was later determined to be Mr. Ochoa's stolen Buick Century. Chuck Bitar, a local resident, had detected the smell of gas. Mr. Bitar saw a hose coming from the gas tank of a parked rental truck into a can. Mr. Bitar telephoned the sheriff's department. Approximately 10 or 15 minutes later, Mr. Bitar saw someone drive away from the area in a white sedan.

When Deputy Dominguez arrived in response to a radio broadcast, he saw a white sedan pull out of a parking lot behind the gas station near the location of the rental trucks. Deputy Dominguez followed the car. Thereafter, Deputy Dominguez pulled the patrol car alongside the white car. Deputy Dominguez shined a white light into the car. [Petitioner], who was driving the car, looked in Deputy Dominguez's direction for 7 to 10 seconds. [Petitioner] was not wearing a shirt. Deputy Dominguez radioed Deputy Patrick Bohnert. Deputy Bohnert was directly behind Deputy Dominguez's patrol car. Deputy Dominguez, who was in uniform, indicated over the radio he intended to initiate a traffic stop. Deputy Dominguez's patrol car was a typical sheriff's cruiser with lights and a siren. Deputy Dominguez activated his three overhead lights as he pulled behind the white sedan. The red light faced forward. [Petitioner] drove approximately 7 to 10 feet and came to a rolling stop. However, [Petitioner] then accelerated. Deputy Dominguez turned on his air horn siren. [Petitioner] sped away. [Petitioner] made two right turns without signaling and failed to stop at two stop signs. [Petitioner's] car reached speeds of approximately 65 miles per hour, which was in excess of the posted speed limit. Deputy Dominguez continued to use his air horn and forward-facing lights. [Petitioner] turned again after he failed to stop at another stop sign. Deputy Dominguez was advised by the watch commander to cancel the pursuit. [Petitioner] drove into the parking lot of a nearby park. Deputy Dominguez turned off his lights and sirens. Deputy Dominguez followed [Petitioner] into the park. [Petitioner] drove onto the grass some 650 feet before hitting a gate.

In response to another radio broadcast, Deputy Dominguez drove to the northwest corner of the park. Deputy Bohnert and a sergeant, who had responded to the pursuit, arrived at the park. Deputy Bohnert saw [Petitioner] run toward a nearby apartment complex. Deputy Dominguez stopped his patrol car. Deputy Dominguez then saw [Petitioner] "pop up" behind a wall. [Petitioner] was later found hiding in an ivy area near a residence. [Petitioner] wore no shirt. [Petitioner] appeared very lethargic and tired when he was arrested. [Petitioner's] clothing, shoes, and socks were wet. [Petitioner] had several open scratches and cuts. Three five-gallon gas cans and a siphoning hose were in the rear seat of the white sedan, which [Petitioner] had driven.

(Answer Ex. A at 31–32).

### PETITIONER'S CONTENTIONS

Petitioner contends the following:

1. "Count one must be reversed because due process per V.C. § 2800.2 creates a mandatory presumption by stating that a willful or wanton mental state includes the act of committing three traffic violations or the occurrence of property damage, is *Sandstrom* error, violation jury trial and due process" (ground one); and

2. "The court committed prejudicial *Blakely* error by imposing the aggravated term based upon factors not found by the jury beyond a reasonable doubt" (ground two).

(*See* Petition at 5; First Amended Petition.)

## DISCUSSION

The Court will first address the procedural matters, Petitioner's Motion to Amend the Petition, and then will address the merits of the First Amended Petition.

## I

### PETITIONER'S MOTION TO AMEND IS DENIED

In his "Motion for Leave to Amend, Rule 15a" ("Motion"), Petitioner seeks to amend his Petition to add a new claim that his trial counsel was ineffective. It appears that Petitioner filed a habeas petition in the California Supreme Court on November 15, 2005, wherein he raised an ineffective assistance of counsel claim. Specifically, Petitioner alleged that defense counsel failed to object to the evidence to support the offense of Vehicle Code § 2800.2 and the other charges; counsel failed to object to the use of Petitioner's prior convictions as used to enhance the sentence by approximately six years; and counsel failed to object at the sentencing to the imposition of the high term for counts one and three. The California Su-

preme Court denied the Petition containing these claims on August 30, 2006.[1]

### A. *Applicable Law.*

■ Federal Rule of Civil Procedure 15(a) allows a party to amend his petition by leave of court at any time, and such leave shall be freely given when justice so requires. In determining whether to grant a motion for leave to amend, a court considers the following factors, which are not given equal weight: futility of the amendment, bad faith, undue delay, prejudice to the opposing party, and whether the party has previously amended. *Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995). The Ninth Circuit has stated that "futility of an amendment can, by itself, justify the denial of a motion for leave to amend because the preferred amendments would be nothing more than an exercise in futility;" *see Scott v. Baldwin*, 225 F.3d 1020, 1023 (9th Cir.2000) (petitioner's motion to remand denied because it would be futile to amend the habeas petition to allege a claim under *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000)).

■ Denial of leave to amend is reviewed for an abuse of discretion. *Swanson v. United States Forest Service*, 87 F.3d 339, 343 (9th Cir.1996). A Court may properly deny leave to amend where the party seeking amendment had prior knowledge of the facts in the amended pleading but failed to include them in an earlier pleading. *See Kaplan v. Rose*, 49 F.3d 1363, 1370 (9th Cir.1994).

### B. *Petitioner's Amended Claims are Time–Barred.*

■ Here, Petitioner has failed to explain his undue delay in raising his claim of

---

1. Respondent's contention that the claim is unexhausted is incorrect as this claim was exhausted in the California Supreme Court on August 30, 2006. (*See* Motion to Amend and attachments.)

ineffective assistance of counsel. Petitioner's Motion included the following: "The law library here at S.A.T.F. Corcoran will not bring inmates to the library unless they have a court deadline. I have successfully but poorly amended *Cunningham* and now have received [sic] exhausted ineffective assistance of counsel claim that was lost when I was transferred to this prison." (Motion at 1.)

Petitioner does not explain why he has taken over four years since he was sentenced to raise his claim of ineffective assistance of counsel in his federal petition. Thus, Petitioner's failure to explain his delay warrants against allowing amendment in this case.

■ Moreover, Petitioner's ineffective assistance of counsel claim is barred by the statute of limitations set forth in 28 U.S.C. § 2244(d)(1). The California Supreme Court denied Petitioner's Petition for Review on February 16, 2005. (Answer, Exhibit C.) There is no indication Petitioner filed a Petition for Writ of Certiorari in the United States Supreme Court. Consequently, his conviction became final 90 days later, on May 17, 2005. Therefore, the last date for Petitioner to file his federal petition was May 17, 2006, one year after the judgment became final. 28 U.S.C. § 2244(d)(1)(A); *see Patterson v. Stewart*, 251 F.3d 1243, 1246 (9th Cir. 2001).

The within Petition was filed on April 22, 2005. As noted, Petitioner filed a habeas petition containing his ineffective assistance of counsel claim in the California Supreme Court on November 15, 2005 which was denied on August 30, 2006. However, Petitioner's (Proposed) Amended Petition was not brought forward for filing until February of 2008 and would be untimely absent some type of "relation back."

■ The Amended Petition raising the ineffective assistance of counsel claim does not relate back to the original Petition. Under Fed.R.Civ.P. Rule 15(c), a claim set forth in an amended habeas petition "relates back" to the date of filing of the original petition if the claims in the amended petition and the claims in the original petition arise out of the same "conduct, transaction or occurrence." In *Mayle v. Felix*, 545 U.S. 644, 650, 125 S.Ct. 2562, 162 L.Ed.2d 582 (2005), the United States Supreme Court held that an amended habeas corpus petition does not relate back for statute of limitations purposes when it asserts a new ground for relief supported by facts that differ in both time and type from those set forth in the original pleading. *See also Pace v. DiGuglielmo*, 544 U.S. 408, 416 n. 6, 125 S.Ct. 1807, 161 L.Ed.2d 669 (2005) (habeas claims must be assessed for timeliness on a claim-by-claim basis); *Murphy v. Espinoza*, 401 F.Supp.2d 1048, 1052–1053 (C.D.Cal.2005) (same).

In *Mayle*, the petitioner filed a habeas petition alleging that the admission of videotaped testimony of a prosecution witness violated his rights under the Sixth Amendment's Confrontation Clause. *Mayle v. Felix*, 545 U.S. at 648, 125 S.Ct. 2562. Then, five months after the expiration of AEDPA's time limit, the petitioner filed an amended petition with a new claim, that admission of his statements to police violated the Fifth Amendment because his statements were coerced. *Id.* The District Court dismissed the new claim as time-barred, but the Ninth Circuit reversed, holding that the relevant transaction for relation back purposes was the trial and conviction. *Id.* at 652–653, 125 S.Ct. 2562.

The Supreme Court rejected the Ninth Circuit's broad definition of "relation back" and instead focused on whether the new claim would have been pled separately or with a subclaim or variation of the original

claim. The Supreme Court noted that Habeas Corpus Rule 2(c) instructs petitioners to specifically set forth all available grounds for relief, as well as the facts supporting each ground. Under that Rule, the petitioner in *Mayle* would have pled discretely each of his two claims. The Court held that where "the original and amended petition state claims that are tied to a common core of operative facts, relation back will be in order." *Id.* at 664, 125 S.Ct. 2562. In *Mayle*, Justice Ginsburg gave two examples of where relation back is appropriate. *See Id.* at 664 n. 7, 125 S.Ct. 2562. In the first example, the original habeas petition alleged a *Brady* violation, and the amended petition alleged the prosecution failed to disclose a particular report. *Id.*, citing *Mandacina v. United States*, 328 F.3d 995, 1000–1001 (8th Cir. 2003). In the second example, the original petition challenged the trial court's admission of recanted statements, while the amended petition challenged the court's refusal to allow the defendant to show that the statements had been recanted. *Id.* at 644 n. 7, 125 S.Ct. 2562 (citing *Woodward v. Williams*, 263 F.3d 1135, 1142 (10th Cir.2001)).

■ In *Jackson v. Roe*, 425 F.3d 654, 660 n. 8 (9th Cir.2005), the Court recognized that in *Mayle*, the Ninth Circuit's former understanding of the relation back standard under Fed. R.Civ.P. Rule 15(c), which allowed amendment to a habeas petition to "relate back" to the date of the original petition "so long as a new claim stems from the habeas petitioner's trial, conviction or sentence" was too broad. Instead an amended claim in a habeas petition related back for statute of limitations purposes only if it shares a "common core of operative facts" with the original claim. *Id.* Thus, a new claim of ineffective assistance will not relate back to an earlier petition that had no claim with ineffective assistance of counsel absent a common core of operative facts. *Powell v. United*

*States*, 452 F.Supp.2d 634, 638 (D.Md.2006) (petitioner conceded the claim of ineffective assistance of counsel for failing to investigate prior history did not relate to claim trial court had erroneously imposed higher sentence based on facts not found by jury). Indeed, under *Mayle* claims of ineffective assistance do not relate back to earlier claims of ineffective assistance just because the claims rely on the same legal theory.

Here, Petitioner did not raise any claims of ineffective assistance of counsel in his original Petition. While Petitioner wants to add subclaims that trial counsel failed to object to evidence and to the use of his prior conviction to enhance his sentence, these claims do not arise from the same operative facts set forth in the original petition. *See Martin v. Hubbard*, 192 Fed.Appx. 616 (9th Cir.2006) (requiring "the original petition to contain the essential factual predicates of the later claims."); *Preston v. Harris*, 216 Fed.Appx. 677 (9th Cir.2007) (denying relation back where claims involve different errors, actors and times.). The ineffective assistance of counsel claims do not relate back and the (Proposed) Amended Petition would be untimely; thus, the within Motion to Amend is **DENIED**.

## II

### *THE MERITS OF THE PETITION STANDARD OF REVIEW*

#### A. *The AEDPA.*

This case is governed by the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *See Koerner v. Grigas*, 328 F.3d 1039, 1044 (9th Cir.2003). As explained by the Supreme Court, the AEDPA "places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with re-

spect to claims adjudicated on the merits in state court." *Williams v. Taylor,* 529 U.S. 362, 412, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000); *see also Miller–El v. Cockrell,* 537 U.S. 322, 337, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003) ("Statutes such as AEDPA have placed more, rather than fewer, restrictions on the power of federal courts to grant writs of habeas corpus to state prisoners.").

Under the AEDPA, a federal court may not grant a writ of habeas corpus on behalf of a person in state custody "with respect to any claim that was adjudicated on the merits in state court proceedings unless the adjudication of the claim (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d).

Section "2254(d) (1)'s 'contrary to' and 'unreasonable application' clauses have independent meaning." *Bell v. Cone,* 535 U.S. 685, 694, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002). The Supreme Court has explained that

> [u]nder the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Williams v. Taylor,* 529 U.S. at 412–13, 120 S.Ct. 1495; *Brown v. Payton,* 544 U.S. 133, 140–41, 125 S.Ct. 1432, 161 L.Ed.2d 334 (2005); *Lockyer v. Andrade,* 538 U.S. 63, 74–75, 123 S.Ct. 1166, 155 L.Ed.2d 144 (2003); *see Weighall v. Middle,* 215 F.3d 1058, 1061 (9th Cir.2000) (discussing *Williams* ).

■ While Supreme Court precedent is the only authority that is controlling under the AEDPA, this Court may look to Ninth Circuit case law as persuasive authority "for purposes of determining whether a particular state court decision is an unreasonable application of Supreme Court law." *Vlasak v. Superior Court of California ex rel. County of Los Angeles,* 329 F.3d 683, 687 (9th Cir.2003) (quoting *Luna v. Cambra,* 306 F.3d 954, 960 (9th Cir.) (internal quotation marks and citation omitted), amended by 311 F.3d 928 (9th Cir.2002)).

Further, the AEDPA provides that state court findings of fact are presumed to be correct unless Petitioner rebuts that presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

■ Finally, the AEDPA "does not require a federal habeas court to adopt any one methodology in deciding the only question that matters under § 2254(d)(1)— whether a state court decision is contrary to, or involved an unreasonable application of, clearly established federal law." *Lockyer v. Andrade,* 538 U.S. at 71, 123 S.Ct. 1166.

## III

### *PETITIONER IS NOT ENTITLED TO HABEAS RELIEF ON HIS CLAIM THAT THE TRIAL COURT ERRED IN INSTRUCTING THE JURY*

In ground one Petitioner contends that the trial court committed error when administering instructions to the jury. According to Petitioner, the trial court erred

when instructing the jury on the concept of "willful or wanton disregard for the safety of persons or property," by instructing with an unconstitutional mandatory presumption contained in Vehicle Code § 2800.2(b). Petitioner argues that informing the jury that commission of three Vehicle Code violations while fleeing a police officer constitutes "willful or wanton disregard for the safety of persons or property" violated his due process rights. (Petition at 5, attachment at 4–16).

Petitioner's jury was instructed in accordance with Vehicle Code § 2800.2(b), which provides in relevant part,

> For purposes of this section, a willful or wanton disregard for the safety of persons or property includes, but is not limited to, driving while fleeing or attempting to elude a pursuing peace officer during which time either three or more violations that are assigned a traffic violation point count under section 12810 occur, or damage to property occurs.

(Cal. Vehicle Code § 2800.2(b)).

The instructional language which Petitioner deems improper appears in California Jury Instructions Criminal ("CALJIC") 12.85. As administered to the jury, CALJIC 12.85 provides as follows:

> Defendant is accused in Count 1 of having violated section 2800.2, subdivision (a) of the Vehicle Code, a crime.
>
> A person is guilty of a violation of Vehicle Code section 2800.1, subdivision (a), a misdemeanor, if the person, while operating a motor vehicle and with the specific intent to evade, willfully flees or otherwise attempts to elude a pursuing peace officer, and
>
> 1. The peace officer's motor vehicle is exhibiting at least one lighted red lamp visible from the front, and the

person either sees or reasonably should have seen the lamp,

> 2. The peace officer's motor vehicle is sounding a siren as may be reasonably necessary,
>
> 3. The peace officer's motor vehicle is distinctively marked, and
>
> 4. The peace officer's motor vehicle is operated by a peace officer wearing a distinctive uniform.
>
> Every person who flees or attempts to elude a pursuing peace officer in violation of Vehicle Code section 2800.1, subdivision (a) and drives the pursued vehicle in a willful or wanton disregard for the safety of persons or property is guilty of a violation of Vehicle Code section 2800.2, subdivision (a), a felony.
>
> *A willful or wanton disregard for the safety of persons or property also includes, but is not limited to, driving while fleeing or attempting to elude a pursuing peace officer during which time the person driving commits three or more Vehicle Code violations, such as violations of Vehicle Code section 22450 or 22350,[2] or damage to property occurs.* [italics added]
>
> "Willful or wanton" means an act or acts intentionally performed with a conscious disregard for the safety of persons or property. It does not necessarily include an intent to injure.
>
> In order to prove a violation of Vehicle Code section 2800.2, subdivision (a), each of the following elements must be proved:
>
> 1. A person, while operating a motor vehicle, willfully fled or otherwise attempted to elude a pursuing peace officer;

---

**2.** As explained elsewhere in the jury instructions, Vehicle Code § 22450 compels drivers to stop at stop signs, and Vehicle Code

§ 22350 forbids speeding. (CT 94; RT 434–35).

2. The person did so with the specific intent to evade the pursuing peace officer;

3. The peace officer's vehicle exhibited at least one lighted red lamp visible from the front;

4. The person saw or reasonably should have seen the red lamp;

5. The peace officer's vehicle sounded a siren, as reasonably necessary;

6. The peace officer's motor vehicle was distinctively marked;

7. The peace officer's motor vehicle was operated by a peace officer wearing a distinctive uniform; and

8. The driver of the pursued vehicle drove the vehicle in a willful or wanton disregard for the safety of persons or property.

If you unanimously find beyond a reasonable doubt that the defendant is guilty of a violation of Vehicle Code section 2800.2, subdivision (a), you should find the defendant guilty as charged in Count 1.

If you unanimously agree that you are not satisfied beyond a reasonable doubt that the defendant is guilty of a violation of Vehicle Code section 2800.2, subdivision (a), but unanimously agree that the defendant is guilty of a violation of Vehicle Code section 2800.1, subdivision (a), you should find him not guilty of violating Vehicle Code section 2800.2, subdivision (a), and guilty of the lesser and necessarily included crime of violating Vehicle Code section 2800.1, subdivision (a), a misdemeanor.

If you unanimously agree that you are not satisfied beyond a reasonable doubt that the defendant is guilty of a violation of Vehicle Code section 2800.1, subdivision (a), you should find him not guilty. (CALJIC 12.85; CT 91–93 (italicization of challenged language added)). Defense counsel registered an objection during a hearing on the proposed jury instructions. (RT 384–86).

The Due Process Clause of the Fourteenth Amendment protects the accused against conviction except upon proof beyond a reasonable doubt of every element of the charged offense. *In re Winship*, 397 U.S. 358, 364, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). "Jury instructions relieving States of this burden violate a defendant's due process rights." *Carella v. California*, 491 U.S. 263, 265, 109 S.Ct. 2419, 105 L.Ed.2d 218 (1989) (citing *Francis v. Franklin*, 471 U.S. 307, 105 S.Ct. 1965, 85 L.Ed.2d 344 (1985); *Sandstrom v. Montana*, 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979)). The threshold question with respect to a presumption is whether it is mandatory. *Id.* A presumption is mandatory if the instruction at issue "require[s] [the jurors] to find the presumed fact if the State proves certain predicate facts." *Id.* (improper mandatory presumption found where jury was instructed that "intent to commit theft by fraud is presumed" from failure to return rented property within twenty days of demand).

Petitioner first raised a claim of instructional error in his appeal to the California Court of Appeal and petition for review to the California Supreme Court. The California Supreme Court denied the petition without comment or citation to authority. (Answer Ex. A, B, C; Respondent's Lodgment no. 3, 5). In accordance with *Ylst v. Nunnemaker*, 501 U.S. 797, 803, 111 S.Ct. 2590, 115 L.Ed.2d 706 (1991), this Court looks through the California Supreme Court's unexplained order to the judgment of the California Court of Appeal. The Court of Appeal rejected Petitioner's claim, observing that Vehicle Code § 2800.2(b) "sets out the Legislature's *definition* of what qualifies as willful and wanton conduct under subdivision (a) . . . . [S]ection 2800.2, subdivision (b) establishes

a rule of substantive law rather than a presumption apportioning the burden of persuasion concerning certain propositions or varying the duty of coming forward with evidence." The Court of Appeal concluded, "Vehicle Code section 2800.2 and CALJIC no. 12.85 do not set forth unconstitutional mandatory presumptions." (Answer Ex. A at 33–34).

 Based on review of the entire record, this Court defers under the applicable standard of review to the state court's determination, and independently finds that the challenged instruction did not violate Petitioner's constitutional right to due process. There is no indication that the jurors were required to presume willful and wanton disregard for others if the prosecution proved that Petitioner incurred three or more Vehicle Code violations while fleeing from the police. Subsection (b) of Vehicle Code § 2800.2 is merely a definition or description of what qualifies as willful and wanton conduct, rather than a mandate that the jury presume malice given a set of predicate facts. The jury instructions did not create a mandatory presumption, and thus the state court's decision was not contrary to clearly established federal law. Habeas relief is not warranted on ground one.

## IV

### *PETITIONER IS NOT ENTITLED TO HABEAS RELIEF ON HIS CLAIM THAT THE TRIAL COURT ERRED WHEN SENTENCING HIM*

 In ground two of the original Petition, Petitioner contends that the trial court committed "*Blakely* error" (*Blakely v. Washington*, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004)) when it sentenced him. Petitioner asserts that the trial court violated his Sixth Amendment right to trial by jury by imposing upper terms as to count one (evading an officer) and count three (unlawful driving or taking of a vehicle) based on aggravating facts that were neither found by the jury nor admitted by Petitioner. (Petition at 5, attachment at 17–29). Respondent in his original Answer contends that ground two is procedurally barred and fails on the merits.[3] (Answer at 12–28).

---

**3.** Petitioner first raised a claim of *Blakely* error in his appeal to the California Court of Appeal and petition for review to the California Supreme Court. The California Supreme Court denied the petition without comment or citation to authority. (Answer Ex. A, B, C; Respondent's Lodgment no. 3, 5). In accordance with *Ylst v. Nunnemaker*, 501 U.S. 797, 803, 111 S.Ct. 2590, 115 L.Ed.2d 706 (1991), this Court looks through the California Supreme Court's unexplained order to the judgment of the California Court of Appeal. The Court of Appeal rejected Petitioner's claim on the procedural ground that the allegation of erroneous imposition of upper terms due to improper reliance upon aggravating factors not found by a jury "was not asserted in the trial court. Therefore, all of defendant's *Blakely* based federal constitutional contentions have been forfeited." (Answer Ex. A at 34–35). The Court of Appeal also rejected Petitioner's claim on the merits. The Court of Appeal noted that in imposing the upper terms the trial court "relied in part on defen-

dant's extensive record, 10 prior convictions, which is not subject to the federal constitutional jury right," and concluded, "Since the upper term was effectively required under these circumstances, any *Blakely* error was harmless." (Answer Ex. A at 35).

The procedural default doctrine forecloses federal review of a state prisoner's federal habeas claims if those claims were defaulted in state court pursuant to an independent and adequate state law ground. *See Coleman v. Thompson*, 501 U.S. 722, 729–30, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991). To find procedural default, a federal court must determine that the state court explicitly invoked a state procedural bar as an independent basis for its decision, *id.* at 735, 111 S.Ct. 2546, *McKenna v. McDaniel*, 65 F.3d 1483, 1488 (9th Cir. 1995), and that the state procedural bar cited was clear, consistently applied, and well-established at the time of the petitioner's purported default. *See Calderon v. U.S. Dist. Court for Eastern Dist. of California (Bean)*, 96

In the First Amended Petition, Petitioner contends that the trial court erred under *Cunningham v. California,* 549 U.S. 270, 127 S.Ct. 856, 166 L.Ed.2d 856 (2007).[4] Respondent contends that granting relief on Petitioner's claim would create a new rule in violation of *Teague v. Lane,* 489 U.S. 288, 310, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989), the California Supreme Court's rejection of Petitioner's claim was not contrary to or an unreasonable application of Supreme Court precedent, and any error was harmless. (Supplemental Answer.)

Respondent contends that since *Cunningham* had not been decided when Petitioner's conviction became final, "there is a serious question of whether retroactive application of it would violate *Teague v. Lane,* 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989)."

The United States Supreme Court has instructed that when a *Teague* claim has been "properly raised by the state," a federal habeas court must first determine whether a *Teague* bar exists before it may proceed to the merits of the petitioner's substantive claims. *Horn v. Banks,* 536 U.S. 266, 271–72, 122 S.Ct. 2147, 153 L.Ed.2d 301 (2002); *see also Leavitt v. Arave,* 383 F.3d 809, 816 (9th Cir.2004). Although a *Teague* claim that is not argued, or made only "in passing," need not be addressed, *Arredondo v. Ortiz,* 365 F.3d 778, 781–82 (9th Cir.2004), this Court finds

that Respondent has sufficiently presented its *Teague* argument here.

 The *Teague* rule is a "nonretroactivity principle" that "prevents a federal court from granting habeas corpus relief to a state prisoner based on a rule announced after his conviction and sentence became final." *Caspari v. Bohlen,* 510 U.S. 383, 389, 114 S.Ct. 948, 127 L.Ed.2d 236 (1994). Under *Teague,* a "new rule" is one which "breaks new ground or imposes a new obligation on the states or the federal government," and in which "the result was not dictated by precedent existing at the time the defendant's conviction became final." *Teague,* 489 U.S. at 301, 109 S.Ct. 1060.

 The "rule" need not already have been announced by the United States Supreme Court. Where a habeas claim would require the announcement of a new rule, *Teague* applies. *See Saffle v. Parks,* 494 U.S. 484, 487–88, 110 S.Ct. 1257, 108 L.Ed.2d 415 (1990) ("As [the petitioner] is before us on collateral review, we must first determine whether the relief sought would create a new rule [under *Teague.*] If so, we will neither announce nor apply the new rule sought by [the petitioner] unless it would fall into one of two narrow exceptions.") (citations omitted); *see also Stringer v. Black,* 503 U.S. 222, 228, 112 S.Ct. 1130, 117 L.Ed.2d 367 (1992) ("If ... the decision [relied upon] did not announce

F.3d 1126, 1129 (9th Cir.1996), *cert. denied,* 520 U.S. 1204, 117 S.Ct. 1569, 137 L.Ed.2d 714 (1997).

The failure to object at trial is a longstanding appellate procedural bar. *See Vansickel v. White,* 166 F.3d 953, 957 (9th Cir.), *cert. denied,* 528 U.S. 965, 120 S.Ct. 400, 145 L.Ed.2d 312 (1999). The United States Supreme Court has found that failure to object at trial is an independent and adequate state procedural bar. *See Wainwright v. Sykes,* 433 U.S. 72, 86–87, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977). California's contemporaneous objection rule requiring objection at the time of trial to preserve an issue for appeal is an

adequate procedural bar. Here, Petitioner failed to make a contemporaneous constitutional objection to the sentencing judge's imposition of upper terms based upon aggravating factors not found by a jury. Petitioner makes no showing of cause and prejudice or a miscarriage of justice. *See Coleman v. Thompson,* 501 U.S. at 750, 111 S.Ct. 2546. Therefore, Ground two is procedurally barred; however, the Court will alternatively address the merits of ground two.

4. As noted previously, the Court allowed Petitioner a Stay to return to state court to exhaust his claim under *Cunningham.*

a new rule, it is necessary to inquire whether granting the relief sought would create a new rule because the prior decision is applied in a novel setting, thereby extending the precedent.").

To determine whether a habeas Petitioner is entitled to the application of a particular rule, the habeas court performs a three-step analysis under *Teague:* (1) the date on which the defendant's conviction became final is determined; (2) the habeas court considers whether the rule is new;[5] and (3) if the rule is new, the court determines whether the rule nonetheless falls within one of the two narrow exceptions to the *Teague* doctrine. *See O'Dell v. Netherland,* 521 U.S. 151, 156, 117 S.Ct. 1969, 138 L.Ed.2d 351 (1997).

"In general ... a case announces a new rule when it breaks new ground or imposes a new obligation on the States or the Federal Government." *See Teague,* 489 U.S. at 301, 109 S.Ct. 1060. Put another way, "a case announces a new rule if the result was not dictated by precedent existing at the time the defendant's conviction became final," see *id.* at 301, 109 S.Ct. 1060, or put yet another way, "the unlawfulness of [the] conviction was apparent to all reasonable jurists," *Lambrix v. Singletary,* 520 U.S. 518, 527–28, 117 S.Ct. 1517, 137 L.Ed.2d 771 (1997).

Respondent contends that Petitioner's sentencing error claim is barred by *Teague* because Petitioner is now relying on the Supreme Court's January 22, 2007 decision in *Cunningham v. California,* 549 U.S. 270, 127 S.Ct. 856, 166 L.Ed.2d 856 (2007) in support of this claim, and his judgment of conviction became final in January 2004, before *Cunningham* was decided. The fallacy of respondent's contention is that it is clear from the language and analysis set forth by Justice Ginsburg in *Cunningham* that the Supreme Court was not pronouncing a new rule under *Teague,* but rather was merely applying the "bright line" rule announced in *Apprendi* to California's determinate sentencing law.[6] Justice Ginsburg summarized the Court's holding as follows:

> "Contrary to the *Black*[7] court's holding, our decisions from *Apprendi* to *Booker* point to the middle term specified in California's statutes, not the upper term, as the relevant statutory maximum. Because the DSL authorizes the judge, not the jury to find the facts permitting an upper term sentence, the system cannot withstand measurement against our Sixth Amendment precedent." (Emphasis added.)

The Supreme Court's reliance on its earlier decisions in *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), *Blakely v. Washington,* 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), and *United States v. Booker,* 543

---

**5.** A rule may be "new" either because the decision relied upon by the habeas Petitioner itself announced a new rule after his conviction became final, or because the habeas Petitioner seeks to apply a prior decision's "old rule" to a novel setting, such that relief would create a new rule by the extension of the precedent. *See Stringer v. Black,* 503 U.S. 222, 228, 112 S.Ct. 1130, 117 L.Ed.2d 367,(1992). Respondent here is solely arguing that *Cunningham* itself announced a new rule.

**6.** The Court notes that the fact that the decision of the Supreme Court was not unanimous is not sufficient in itself to show that the rule is new. *See Beard v. Banks,* 542 U.S. 406, 416 n. 5, 124 S.Ct. 2504, 159 L.Ed.2d 494 (2004) ("Because the focus of the inquiry is whether reasonable jurists could differ as to whether precedent compels the sought-for rule, we do not suggest that the mere existence of a dissent suffices to show that the rule is new.").

**7.** *People v. Black,* 35 Cal.4th 1238, 1244, 29 Cal.Rptr.3d 740, 113 P.3d 534 (2005).

U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005), which the Supreme Court cited as "Sixth Amendment precedent," necessarily suggests that it found its decision to be compelled by those cases. While admittedly not dispositive, *Cunningham's* language supports the conclusion that the case did not issue a new rule. *See O'Dell,* 521 U.S. at 161 n. 2, 117 S.Ct. 1969 (language of four justices to the effect that the decision was "compelled" by prior precedent, while "far from conclusive," "is certainly evidence tending to prove that the rule ... [i]s not new"); *Lambrix,* 520 U.S. at 528, 117 S.Ct. 1517 (concluding that *Espinosa v. Florida* announced a new rule, and finding it "significant" that *Espinosa* "did not purport to rely upon any controlling precedent").

By the time Petitioner's conviction became final in January 2004, the Supreme Court already had issued its decisions in *Apprendi* and *Booker.* Respondent has pointed to no (other) Supreme Court cases comprising part of the legal landscape at the time Petitioner's conviction became final that suggest that *Cunningham* was not dictated by the prior Supreme Court precedent that the *Cunningham* court itself specifically relied upon. While the Ninth Circuit has found that *Apprendi, Blakely,* and *Booker* all constituted "new rules," it does not, *a fortiori,* follow that *Cunningham* itself is a rule not dictated by those precedents.

Recently, in *Butler v. Curry,* 528 F.3d 624 (C.A.9 2008), the Ninth Circuit held that the United States Supreme Court's decision in *Cunningham* did not announce a new rule of constitutional law under *Teague's* non-retroactivity rule. To the contrary, it held that *Apprendi, Blakely* and *Booker* established that sentencing schemes that raise the maximum possible term based on facts not found by a jury violate the constitutional rights of Defendants.

■ Turning now to the merits of petitioner's sentencing error claim, the Court finds and concludes that habeas relief is not warranted for the reasons discussed below.

## A. *The Trial Court Did Not Err in Imposing the Upper Term Sentence.*

In *Apprendi,* 530 U.S. at 490, 120 S.Ct. 2348, the Supreme Court held that a criminal defendant does not have a federal constitutional right to a jury trial on the truth of a prior felony conviction allegation. *See also Almendarez–Torres v. United States,* 523 U.S. 224, 239–47, 118 S.Ct. 1219, 140 L.Ed.2d 350 (1998) (rejecting the petitioner's claim that, because his prior felony conviction increased the maximum sentence to which he was exposed, his recidivism qualified as an "element" of the current offense which the Government was constitutionally required to state in the indictment and prove to the jury beyond a reasonable doubt); *United States v. Pacheco–Zepeda,* 234 F.3d 411, 413–15 (9th Cir.2000) (rejecting the defendant's argument that *Apprendi* limited *Almendarez–Torres* to cases where a defendant admits the prior aggravated felony convictions on the record), *cert. denied,* 532 U.S. 966, 121 S.Ct. 1503, 149 L.Ed.2d 388 (2001).

In *Butler,* the Court noted there are three prerequisites for applying the *Almendarez–Torres v. United States,* 523 U.S. 224, 118 S.Ct. 1219, 140 L.Ed.2d 350 (1998) prior conviction exception: first, the fact of a prior conviction is the only fact that both increases a penalty beyond the statutory maximum and can be found by a sentencing court; second, the narrow prior conviction exception applies only to facts directly reflected in the documents of conviction, not to secondary facts that are derived or inferred from a prior conviction or from the conviction documents; and

third, as the prior conviction exception is justified by the reliability of court documents created as part of a process with Sixth Amendment safeguards, it does not extend to facts that may be proven only by reference to documents that were not developed as a result of such a process. *Butler v. Curry*, 528 F.3d 624, 645 (C.A.9 (Cal.)).

In *Butler*, the Court held that the prior conviction exception to the rule that any fact that increases the penalty of a crime beyond the prescribed statutory maximum must be submitted to a jury and proved beyond a reasonable doubt, did not extend to Butler's probationary status at the time of the instant crime; thus, Butler's Sixth Amendment rights were violated when the maximum term of punishment was raised based on his probationary status, which was not admitted by Butler or proved to a jury beyond a reasonable doubt. The fact that Butler was on probation at the moment of his current crime was not reflected in the documents of his prior conviction and could not be conclusively inferred from those documents. *Butler v. Curry*, 528 F.3d at 646.

While the *Butler* court found a Sixth Amendment violation, the court noted that Butler would be entitled to relief only if the sentencing error was not harmless.[8] *See Washington v. Recuenco*, 548 U.S. 212, 126 S.Ct. 2546, 2552, 165 L.Ed.2d 466 (2006) (holding that sentencing errors are subject to harmless error analysis). *Butler v. Curry*, 528 F.3d at 647–48.

### 1. *Petitioner Has Not Met His Burden Under AEDPA.*

Under California law, the sentence range for the crime charged in count one and the crime charged in count three is a low term of 16 months, a middle term of 2 years, and an upper term of 3 years. (CT 43–46). Sentencing is guided by Rule 4.420 of the Rules of Court and by Penal Code § 1170, which require that the middle term be imposed unless an aggravating factor or a mitigating factor is found. (Cal. Rules of Court Rule 4.420(a); Cal.Penal Code § 1170(b)).

The evidence at trial showed Petitioner siphoned gasoline from a parked rental truck for use in his stolen car, and then he led police officers on a high-speed chase. Petitioner ran through stop signs, crashed his car and then fled on foot. (RT at 310–311, 314–331, 359–360, 364–365.) Following a jury trial in the Los Angeles County Superior Court, Petitioner was convicted of: evading a police officer (California Vehicle Code § 2800.2(a)); petty theft with a prior (PC § 666) and unlawful taking of vehicle (Vehicle Code § 10851(a)). In a court trial, the court found a prior conviction allegation and a prior prison term allegation true. (CT at 119–121, 124–125, 139.)

Petitioner's sentencing hearing took place in January 2004. At the hearing the judge entertained argument by the prosecutor and defense counsel, and took into consideration the probation officer's report, the record in the case, and the true

---

8. The trial court in *Butler* found two aggravating factors to support the upper term: a vulnerable victim and Butler's probationary status. The *Butler* court found that the vulnerable victim aggravating factor finding was not harmless as there was "grave doubt" as to whether a jury would have found beyond a reasonable doubt that Daria was a vulnerable victim of domestic violence based solely on the circumstance of being attacked from be-

hind. With respect to the second aggravating factor finding, Butler's probationary status, the *Butler* court found the record before the District Court did not reveal what evidence on the probation issue was presented to the trial court and therefore could not determine whether a jury would have found Butler's probationary status beyond a reasonable doubt and remanded the case to the District Court. *Butler v. Curry*, 528 F.3d at 649–51.

finding on the allegation that Petitioner had previously suffered a "strike" conviction. (CT 138–41; RT 901, 904–09).[9] Stressing Petitioner's lengthy criminal record, the prosecutor argued for imposition of upper terms. Defense counsel disputed the probation officer's report's list of circumstances in aggravation, urged leniency, and suggested imposition of low terms. On both count one and count three the judge sentenced Petitioner to the upper term of 3 years. The judge explained that the imposition of the upper terms was a result of his finding of no mitigating factors, and two aggravating factors: "defendant's prior convictions as an adult are numerous," and "defendant's conduct indicates that he is a serious danger to others and will pose a substantial danger to others if not incarcerated." (RT 908–09). Petitioner received an aggregate term of imprisonment of 8 years and 4 months.[10] (CT 138–43; RT 908–10).

In *Blakely v. Washington* the Supreme Court reiterated, " 'Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.' " *Blakely v. Washington*, 542 U.S. 296, 301, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004) (quoting *Apprendi v. New Jersey*, 530 U.S. 466, 490, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000)). The Supreme Court explained,

> "Our precedents make clear . . . that the 'statutory maximum' for *Apprendi* purposes is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant*. [citations] In other words, the relevant 'statutory maximum' is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose *without* any additional findings. When a judge inflicts punishment that the jury's verdict alone does not allow, the jury has not found all the facts 'which the law makes essential to the punishment,' [citation], and the judge exceeds his proper authority."

*Blakely v. Washington*, 542 U.S. at 303–04, 124 S.Ct. 2531 (defendant's Sixth Amendment right to trial by jury was violated where the facts admitted in defendant's guilty plea supported a maximum sentence of 53 months, but pursuant to state law the court imposed a sentence of 90 months after making a judicial determination that defendant had acted with "deliberate cruelty").

The Supreme Court issued its decision in *Blakely* in June 2004. At that time Petitioner's case was pending on direct appeal. Accordingly, *Blakely* is applicable to Petitioner's case. *See Schardt v. Payne*, 414 F.3d 1025, 1033 (9th Cir.2005).

While the Supreme Court said in *Cunningham* that imposition of the upper term based on an aggravating factor not found by the jury violates the Sixth Amendment, the Court retained an important exception—a defendant's prior conviction. *Cunningham*, 127 S.Ct. at 860, 864, 868. The

---

**9.** The probation officer's report is not part of the record before this Court. It summarized Petitioner's criminal record, which extended back to 1985, and listed circumstances in aggravation in the current case. (*See* CT index; RT 905–07; Answer Ex. A at 35).

**10.** On count one the judge sentenced Petitioner to the upper term of 3 years, doubled it due to his prior "strike" pursuant to Penal Code § 667(e)(1), and added 1 year pursuant to Penal Code § 667.5(b). On count two the judge imposed one-third of the middle term, or 8 months, and doubled it. On count three the judge sentenced Petitioner to the upper term of 3 years, doubled it, and added 1 year. The sentence on count three was imposed concurrent to the rest of Petitioner's sentence. (CT 138–43; RT 908–10).

Court continued to recognize in *Cunningham*, as it did in prior cases, that selection of a sentence based on a defendant's prior convictions did not violate the Sixth Amendment. *Accord, Blakely*, 542 U.S. at 301, 124 S.Ct. 2531; *Apprendi*, 530 U.S. at 490, 120 S.Ct. 2348. (Except for a prior conviction, any fact that increases the penalty for a crime beyond the statutory maximum must be submitted to a jury and proved beyond a reasonable doubt.)

▇▇▇▇ Under California law, a single aggravating factor is sufficient to render a defendant eligible for the upper term. *Black II*, 41 Cal.4th at 813, 62 Cal.Rptr.3d 569, 161 P.3d 1130 (citing *People v. Osband*, 13 Cal.4th 622, 728, 55 Cal.Rptr.2d 26, 919 P.2d 640 (1996)); *see Cunningham*, 127 S.Ct. at 860 (the middle term was required "unless the judge found one or more additional facts in aggravation"), 868 ("an upper term sentence may be imposed only when the trial judge finds an aggravating circumstance"). The "constitutional requirement of a jury trial and proof beyond a reasonable doubt applies only to a fact that is 'legally essential to the punishment' [citation], that is to 'any fact that exposes a defendant to a greater potential sentence' than is authorized by the jury's verdict alone [citation]." *Black II* 41 Cal.4th at 812, 62 Cal.Rptr.3d 569, 161 P.3d 1130 (quoting *Blakely*, 542 U.S. at 313, 124 S.Ct. 2531, and *Cunningham*, 127 S.Ct. at 863).

▇▇▇▇ Further, once there is one constitutionally sufficient aggravating circumstance, "[a]ny additional fact finding engaged in by the trial court in selecting the appropriate sentence among the three available options does not violate the defendant's right to a jury trial." *Black II*, 41 Cal.4th at 812, 62 Cal.Rptr.3d 569, 161 P.3d 1130; *see Butler v. Curry*, 528 F.3d 624 (9th Cir.2008). As the California Supreme Court has explained, these additional aggravating circumstances findings "do not pertain to whether the defendant has a legal right to a lesser sentence-and that makes all the difference insofar as judicial impingement upon the traditional role of the jury is concerned." *Black II*, 41 Cal.4th at 813, 62 Cal.Rptr.3d 569, 161 P.3d 1130 (quoting *Blakely*, 542 U.S. at 309, 124 S.Ct. 2531).

Here, as support for the upper term sentence, the Court cited the fact that Petitioner had suffered a prior conviction for robbery in 1997 and received a two-year sentence in state prison. (CT 138–141; RT 901, 904–909.) The judge listed two aggravating factors: "Defendant's prior convictions as an adult are numerous" and "defendant's conduct indicates he is a serious danger to others and will pose a substantial danger to others if not incarcerated." (RT 90–8–09.)

Alternatively, even assuming *arguendo* there was *Cunningham* error in Petitioner's case, he has not established the requisite harm entitling him to relief. *Washington v. Recuenco*, 548 U.S. 212, 126 S.Ct. 2546, 165 L.Ed.2d 466 (2006) (*Blakely* errors are not structural errors and are subject to harmless error analysis); *see Brecht v. Abrahamson*, 507 U.S. 619, 632, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993) (in a habeas proceeding, the proper standard of review is whether the error had a "substantial and injurious effect"). Any error in imposing the upper term for Petitioner's conviction was harmless. Petitioner had been previously convicted of robbery and had served a prior prison term. As noted, under California law, only one aggravating factor is necessary to set the upper term as the maximum term. Under *Apprendi*, a prior conviction is explicitly excepted from the requirement that a jury consider facts that increase the penalty for a crime beyond the statutory maximum, *Apprendi*, 530 U.S. at 490, 120 S.Ct. at 2362–2363, 120 S.Ct. 2348, and it is sufficient to ex-

pose Petitioner to sentencing within the upper term. *Blakely,* 542 U.S. at 303–304, 124 S.Ct. 2531. Therefore, the jury could have found a prior conviction aggravating factor true beyond a reasonable doubt had it been presented. A jury presented with the ample, undisputed evidence of Petitioner's recidivism would undoubtedly have rendered a verdict beyond a reasonable doubt regarding his criminal record. Therefore, any *Cunningham* error was harmless because the upper term sentence would have been authorized in imposing the sentence.

## RECOMMENDATION

For all the foregoing reasons, it is recommended that the District Court issue an order: (1) approving and adopting this Report and Recommendation; and (2) directing that Judgment be entered denying and dismissing the Petition with prejudice.